## 20075

Heyward K. KLECKLEY, Individually and representing all other taxpayers and property owners within Richland-Lexington Airport District, Appellant, v. Robert G. PULLIAM, Chairman, et al., Respondents.

(217 S. E. (2d) 217)

---

[2] See McCormick, Evidence, Section 11 ([2d] 1972) for a discussion of whether these remarks really are conclusions.

*Mortimer F. Smith, Esq.,* of Cayce, *for Appellant,* cites:

*Messrs. Sinkler Gibbs Simons & Guerard,* of Charleston and *Rogers, McDonald, McKenzie and Fuller,* and *Daniel R. McLeod, Atty. Gen.,* of Columbia, *for Respondents,* cite:

Aug 5, 1975.

Moss, Chief Justice:

This action is one under the "Uniform Declaratory Judgments Act," Section 10—2001 *et seq., 1962* Code of Laws, brought by a taxpayer of the District, Heyward K. Kleckley, the appellant herein, individually and representing all other taxpayers and property owners within Richland-Lexington Airport District. The purpose of the action is to enjoin the Richland-Lexington Airport Commission from issuing general obligation bonds pursuant to a 1975 Act bearing ratification No. R-121, on the grounds that such Act violates Art. VIII, Section 7, and Art. III, Section 34(IX), of the South Carolina Constitution.

Richland-Lexington Airport District (the District) is a special purpose district created by Act No. 681 of the Acts of the General Assembly of the State of South Carolina for the year 1962. 52 Stats. 1660. It is comprised of the territory embraced by the counties of Richland and Lexington. It was constituted a political subdivision of the State and a body politic and corporate. Committed to the District was the public and governmental function of providing and maintaining an airport and suitable air navigation facilities to serve the people of the District and the public generally.

The parties to this action have stipulated the following facts pertinent to the airport, many of which have been taken from the Civil Aeronautics Board's publication entitled "Origin—Destination, Survey of Airline Passenger Traffic for Fiscal Year Ending June 30, 1974."

1. The origin and destination figure for passengers using certified air carriers at Columbia Metropolitan Airport was 637,400. The comparable figure for the Charleston Airport was 606,840, and for the Greenville-Spartanburg Airport, 457,250.

2. 356,689 passengers originated in Columbia and were enplaned at Columbia Metropolitan Airport aboard certified

carriers. During the same time frame, the comparable figure for the Charleston Airport was 347,731, and for Greenville-Spartanburg Airport, 247,018.

3. The Columbia Metropolitan Airport ranks 70th in size in the United States out of a total of 724 airports certified by the Civil Aeronautics Board. The comparable figure for Charleston Airport is number 73, and the comparable figure for Greenville-Spartanburg Airport is number 85.

4. There are seven airports in South Carolina certified to serve scheduled airlines and they are, in addition to Columbia, Charleston and Greenville-Spartanburg: Anderson, Greenwood, Florence and Myrtle Beach. These airports serve only a small number of passengers and the aggregate for the year ended June 30, 1974, showed a total of 74,876 passengers.

5. More air freight cargo was enplaned at Columbia Metropolitan Airport than at any other airport in South Carolina.

6. The Columbia Metropolitan Airport is part of a nation-wide system of airports and is included in the National Air Transportation System, is a part of the National Airport Plan, and a part of the State of South Carolina System of Airports.

7. The Columbia Metropolitan Airport is the principal air transportation facility for those persons residing in the Midlands section of South Carolina and meets the principal air transportation needs of those persons residing in a twelve to fifteen county area in Central South Carolina.

8. The Columbia Metropolitan Airport is the principal South Carolina air transportation facility for 25% to 35% of all people living and residing in the State of South Carolina.

At its 1975 Session, the General Assembly enacted an Act bearing ratification No. R-121 authorizing the Richland-

Lexington Airport Commission, which is the governing body of the District, to issue not exceeding two million dollars of general obligation bonds of the District and to use such funds for the construction, enlargement, improvement and extension of the District's airport facilities; and for the payment of such bonds, pledged the full faith, credit and resources of the District and imposed an annual *ad valorem* tax upon all taxable property within the District sufficient to pay the principal and interest on the bonds as they become due. The Commission proposes to proceed under the authorization of the challenged Act and to issue the bonds authorized thereby.

The South Carolina Constitution was amended on March 7, 1973, by the ratification of new Article VIII, Section 7 thereof, being as follows:

> "The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided. Alternate forms of government, not to exceed five, shall be established. No laws for a specific county shall be enacted and no county shall be exempted from the general laws or laws applicable to the selected alternative form of government."

The appellant contends that Article VIII, Section 7 thereof prohibits the General Assembly from enacting special legislation authorizing the issuance of District bonds and imposing a tax for that purpose, but requires the General Assembly to enact a general law committing the function of providing modern air transport facilities to the counties of the State; that the challenged Act is one for a specific county in violation of Article VIII, Section 7, and is also a special act where a general law can be made applicable in violation of Article III, Section 34 (IX), which prohibits

the enactment of a special law where a general law can be made applicable. The Circuit Court sustained the constitutionality of the Act and the appellant has appealed from that decision.

Two questions are presented for our consideration: (1) The validity of the Act under new Artcile VIII, Section 7; and (2) The validity of the Act under Article III, Section 34(IX).

Article VIII, Section 7, mandates the General Assembly to provide "by general law for the structure, organization, powers, duties, functions and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of the governmental services provided." The mandate by its express terms relates only to "counties" and does not relate to legislation dealing with the "powers, duties, functions, and the responsibilities" which are not "of counties". Likewise, this constitutional provision provides that alternate forms of government, not to exceed five, shall be established.

The concluding sentence of Section 7 provides that "No laws for a specific county shall be enacted and no county shall be exempted from the general laws or laws applicable to the selected alternative form of government." Read alone, this prohibition against the enactment of laws for a specific county could be given such a broad interpretation that it would prohibit the enactment of a law establishing a state park or a branch of a state college in a designated county. The prohibition against laws for a specific county cannot be given an interpretation which might result if the words were taken by themselves and out of context. The prohibition was not intended to create an area in which no laws can be enacted. Rather, the prohibition only means that no law may be passed relating to a specific county which relates to those powers, duties, functions and responsibilities, which under the mandated systems of government, are set aside for counties.

The resolution of the first question depends upon whether the Act here relates to the powers, duties, functions and responsibilities, which belong *peculiarly* to counties.

In *Knight v. Salisbury*, 262 S. C. 565, 206 S. E. (2d) 875, we considered the constitutionality of two acts enacted after the ratification of Article VIII which attempted to establish and finance a recreation district within Dorchester County. The special acts in the cited case would have deprived the county governing body of Dorchester County, when established pursuant to the mandate of Article VIII, Section 7, of the power to provide recreational facilities within a designated area of the county. If enacted subsequent to the establishment of the Dorchester County government under the aforesaid section, such an act would clearly be for a specific county which would treat the powers, duties, functions, and responsibilities of the county government of Dorchester County differently from the other county governments within its selected alternative form of government. Inasmuch as the General Assembly could not, in the case of a specific county, pass a special act curtailing the county-wide powers of the governing body of the county, it was impermissible for the Legislature to achieve indirectly the same result. Thus, we held in the *Knight* case that the General Assembly could not create such a special purpose district in anticipation of the enactment of the general laws mandated by Section 7 of Article VIII.

The Court below conceded that if the operation of airports was an exclusive function of an individual county that it should, on the basis of the *Knight* case, hold that the challenged act was unconstitutional. The Court also took note of the fact that the establishment and operation of an airport was a purpose permitted to the counties under the provision of Article X, Section 6, but it reached the conclusion that since the nature of this airport was such that it subserved a governmental function greater than that of a county, the otherwise plenary power of the General Assembly

had not been curtailed by Article VIII, Section 7, insofar as the challenged Act was concerned.

The observation that the mere fact that counties had the function of constructing and maintaining county roads did not circumscribe the power of the General Assembly to establish and maintain a state system of highways is well taken.

The record here clearly establishes that the function of this airport is not peculiar to a single county or counties. To a large segment of the population of this State, the maintenance of the airport is as important as the existence of an interstate highway. It, therefore, follows that since the governmental purpose under the Act establishing the District is not one peculiar to a county, the power of the General Assembly to legislate for this purpose continues, despite Article VIII, Section 7.

There are provisions in the constitutions of many states which prohibit legislation relating to taxation for local government functions. The general rule applicable is stated in 71 Am. Jur. (2d) State and Local Taxation, Section 64, at page 389, as follows:

". . . Generally speaking, it may be said that purposes and activities designed in the main to aid the state in carrying out its governmental functions and policies do not represent corporate purposes, while purposes and activities designed primarily for the exclusive or principal benefit of the inhabitants of a particular municipality do."

In the case of *People ex rel. City of Chicago v. Board of Commissioners of Cook County,* 355 Ill. 244, 189 N. E. 26, there was at issue the right of the legislature of Illinois to require Cook County to pay the fees of jurors of the Municipal Court of the District of Chicago. In answer to the contention that a provision of the Illinois Constitution which prohibited passage of local or special laws regulating county or township affairs rendered the legislation un-

constitutional, the Court held that since the General Assembly of Illinois was given power by its Constitution to regulate the jurisdiction of Municipal Courts in the City of Chicago, the Act was valid. The Court noted that if the purpose of a tax is local and not general, the legislature could not compel a municipality or subdivision of the State to levy, nor could the legislature itself impose, such a tax. But pointing out that corporate purposes within the meaning of the foregoing constitutional provision did not include functions which the municipal corporation performed as a governmental agency of the State, the Court found that the plenary power of the General Assembly in this area was not restricted by the Constitutional provision prohibiting the passage of local or special laws. The Court said:

". . . The General Assembly, therefore, may compel a municipal corporation to perform any duty which relates to the general welfare and security of the state, although the performance of the duty will create a debt to be paid by local taxation . . ."

We do not have to determine if the entire thrust of Section 7 of Article VIII is more or less comprehensive than the provision of the Illinois Constitution discussed above. It need only be observed that a constitutional provision restricting legislative action in local areas does not prevent legislative action if the subject matter dealt with extends beyond the purely local concern.

In the Kentucky case of *Board of Trustees v. City of Newport,* 300 Ky. 125, 187 S. W. (2d) 806, the question was whether the General Assembly of Kentucky might require a municipality to support its local public library. Section 181 of the Constitution of Kentucky denied its General Assembly the power to impose taxes "for the purposes of any county, city, town or other municipal corporation . . ."

In approaching the question, the Court concluded that the function of a public library was educational and was not solely for the benefit of the inhabitants of the particular municipality but was a matter of concern to the State itself. It, therefore, determined that the maintenance of the library was a matter of statewide import which, despite the local interest, made the functioning of the library a statewide matter subject to the plenary power of the legislature. Whether as a matter of law, a public library is or, is not a matter of statewide concern, is beside the point. The important principle is that if the subject matter of the legislation is not peculiar to the political subdivision dealt with by the applicable constitutional provision, the existing plenary power of the General Assembly continues.

We conclude that the court below was correct in holding that the Act authorizing the Richland-Lexington Airport Commission to issue general obligation bonds as specified therein, is not a county function within the meaning of Article VIII, Section 7, but one of state concern which can be dealt with by the General Assembly.

The second question raised by the appellant is whether the Act violates Article III, Section 34(IX) as a special law where a general law may be applicable. The appellant contends that new Article VIII contains provisions permitting counties to agree for the joint administration of any function and exercise of powers, and in the sharing of the cost thereof, and that the result sought to be obtained by this enactment could result from agreement on the part of the county councils of Richland and Lexington Counties to issue bonds of each county to provide the monies required for the improvement of the airport. The appellant further contends that Act No. 1189 of 1974, 58 Stats. 2787, provides a procedure by which the district here could issue bonds. The appellants rely on the

reasoning in the *Knight* case which pointed out that there was no longer a need for the General Assembly to create special purpose districts, and that the Act here, for such reason, must be invalidated. The mere existence of permissive legislation to accomplish a particular result does not of itself prevent the General Assembly from operating in that area.

In the case of *Mills Mill v. Hawkins,* 232 S. C. 515, 103 S. E. (2d) 14, the validity of a special purpose district created to provide a public water and sewer facility in an area of Spartanburg County was challenged as being violative of Article III, Section 34(IX). In the cited case we pointed out that the controlling question was not whether there was a general law on the subject, but whether such could be made applicable. We there approved the creation of a district by a special act of the General Assembly because the public health was involved. We said:

"Evidently the General Assembly concluded that a water and sewer district covering this area would not be formed either . . . by voluntary action . . . or that the creation of the same would be considerably delayed, and for the protection of the public health immediate State action was necessary."

Article VIII, Section 7, now prohibits special laws of the sort upheld in the *Mills Mill* case. Significant, however, is its holding that unless prohibited by some constitutional provision, the mere fact that permissive legislation exists does not prevent the General Assembly from acting directly.

In *Berry v. Milliken,* 234 S. C. 518, 109 S. E. (2d) 354, it was argued that since Section 6 of Article X permitted a county to establish and maintain an airport, the implication was that a special district could not be created for such purpose. We said:

"The first contention made by petitioners is that the Act is special legislation of the sort prohibited by Section

34 of Article III of the Constitution. They say the "Uniform Airports Act" enacted in 1937, 40 St. at L. 466, now comprising with amendments, Section 2-101 through 2-120 of the 1952 Code, is applicable and shows that the subject is reasonably susceptible of general treatment. . . . In its enactment here the General Assembly determined that it would not be feasible for the airport under consideration to be operated jointly by Spartanburg and Greenville Counties and that it would be necessary to create an airport district embracing this area with powers more comprehensive than those contained in the general act. The territory involved constitutes the most thickly populated and most highly industrialized part of South Carolina. It can readily be seen that an airport of this size might require treatment different from one in a smaller county. . . . We had occasion recently in *Mills Mill v. Hawkins,* 232 S. C. 515, 103 S. E. (2d) 14, to review our decisions upholding the validity of legislation creating special purpose districts. It is clear from these authorities that the Act under consideration does not violate the inhibition against a special law where a general law can be made applicable."

It is our conclusion that the Act here involved is not violative of Article III, Section 34(IX).

For the reasons hereinbefore expressed, the result below is,

Affirmed.

LITTLEJOHN, J., and GREGORY, Acting Associate Justice, concur.

LEWIS and NESS, JJ., concur in result.