20312

Linda W. TORGERSON, Individually and representing all other tax-payers and property owners within the Charleston County Airport District, Appellant, v. William E. CRAVER, Jr., Chairman, et al., Respondents.

(230 S. E. (2d) 228)

*William B. Regan, Esq.,* of Charleston, *for Appellant,*

*Messrs. Edward. D. Buckley* and *Sinkler Gibbs Simons & Guerard,* of Charleston, *for Respondents,*

November 17, 1976.

LITTLEJOHN, Justice:

Appellant brings this suit pursuant to the Declaratory Judgment Act, § 10-2001 *et seq.,* 1962 South Carolina Code of Laws, on behalf of herself and all taxpayers and property owners in the Charleston County Airport District (hereinafter District) seeking to have declared unconstitutional the act of 1975 authorizing issuance of Twelve Million, Six Hundred Thousand ($12,600,000.00) Dollars of General Obligation Bonds by the District and the imposition of *ad valorem* taxes for payment thereof. She further seeks to enjoin the governing authority of the District from issuing the bonds.

The respondents include the members of the Charleston County Aviation Authority, the Charleston County Airport District, and the Attorney General of the State of South Carolina.

The respondent Daniel R. McLeod, as Attorney General of the State of South Carolina, was dismissed as a party on his motion with the consent of the remaining parties by Order dated September 29, 1975.

The Charleston County Airport District was created by Act No. 1235 of the 1970 Acts of the South Carolina Gen-

eral Assembly. When created, the District was coterminous with Charleston County. The Charleston County Aviation Authority (hereinafter the Authority) was established as the governing body of the District to carry out its function of acquiring, constructing, operating, and maintaining an adequate airport for the District.

The Bond Act at issue here (bearing Ratification No. R-297 enacted by the 1975 Session of the General Assembly) authorizes the Authority to issue and sell Twelve Million Six Hundred Thousand ($12,600,000.00) Dollars of General Obligation Bonds of the District for the acquisition and construction of improvements and renovations to airport facilities within the District.

The Authority's present plan is to acquire the existing Charleston Airport owned and operated by the City of Charleston in pursuit of its goal to provide modern air navigation facilities for the southeastern part of the State.

Appellant contends that the Bond Act is unconstitutional on three grounds:

(1) The Act violates Section 7 of New Article VIII of the State Constitution ratified on March 7, 1973 which, appellant contends, requires the General Assembly to vest by general law in county governments the function of operating, maintaining and improving airport facilities;

(2) The Bond Act is a special law where a general law can be made applicable in violation of Subdivision IX, Section 34 of Article III of the South Carolina Constitution;

(3) The Bond Act constitutes a denial of equal protection and due process with respect to taxpayers of the District on the ground that the District taxpayers are subjected to a tax levy to finance entirely the cost of facilities which will also directly benefit persons of adjoining counties.

A hearing was held before the Honorable Wade S. Weatherford, Jr., Presiding Judge, on September 23, 1975 at which time the matter was fully argued.

By order dated September 29, 1975, Judge Weatherford held that the operation of the airport facilities as proposed by the Authority did not constitute a county function within the meaning of Article VIII, Section 7, nor was the Bond Act a special act in violation of Subdivision 9, Section 34 of Article III of the South Carolina Constitution. He further held that the imposition of a tax pursuant to the Bond Act would not constitute a denial of due process and equal protection to the taxpayers of the District. The matter comes before this Court on exception to such Order.

Appellant's first contention is that the Bond Act is prohibited by Article VIII, Section 7, which follows:

"The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental service provided. Alternate forms of government, not to exceed five, shall be established. No laws for a specific county may be enacted and no county shall be exempted from the general laws or laws applicable to the selected alternative form of government."

In our opinion, the act violates both the letter and the spirit of the constitutional directive quoted above. One of the purposes of Article VIII and of Home Rule is to relieve the General Assembly of the burdens of local governments. The Charleston County Airport District is a Charleston County political subdivision. The Charleston County Aviation Authority, which operates it, is composed of seven members appointed by the Governor upon recommendation of: (1) Charleston County House Delegation, (2) Senators from Charleston County, and (3) the City Council and County Council of Charleston; in addition, the Mayor of the City of Charleston and the Chairman of the Charleston County Council serve *ex officio*. Taxes for operation and/or to repay bonds are raised by a levy on the district, which for all practical purposes is the county.

The 1975 act pledges for the payment of the $12,600,-000.00 to be borrowed, "the full faith, credit and taxing power of Charleston County Airport District." It further directs that there be levied annually "by the Auditor of Charleston County and collected by the Treasurer of Charleston County, in the same manner as county taxes are levied and collected, a tax without limit on all taxable property in the district sufficient to pay the principal and interest on such bonds."

Article VIII, § 7, prohibits legislation by the General Assembly for a specific county. Involved here is a matter which the county governing authority can and should deal with instead of the General Assembly.

*Kleckley v. Pulliam,* 265 S. C. 177, 217 S. E. (2d) 217 (1975), relied on by the respondents is of no persuasion because the facts are entirely different. In *Kleckley,* an airport district was formed by joining Richland County and Lexington County. This Court held that an Act of the General Assembly authorizing a bond issue by the District was not violative of Article VIII, § 7, rationalizing that it was absolutely impossible for either the governing body of Richland County or the governing body of Lexington County to provide for the bond issue. There was involved a matter with which only the General Assembly could deal. The bond legislation was not for a specific county; it was for a region.

The matter at hand involves problems which can be solved by the local governing body of Charleston County. In *Duncan v. County of York, S. C.,* 228 S. E. (2d) 92 (filed August 11, 1976), we pointed out the broad authority conferred upon county governing bodies by Section 14-3705 of Act No. 283 of 1975. This Court, since the adoption of Article VIII, has decided several cases arising under § 7: *Thorne v. Seabrook,* 264 S. C. 503, 216 S. E. (2d) 177 (1975); *Moye v. Caughman,* 265 S. C. 140, 217 S. E. (2d) 36 (1975); *Knight v. Salisbury,* 262 S. C. 565, 206 S. E. (2d) 875 (1974); *Neel v. Shealy,* 261 S. C. 266, 199 S. E.

(2d) 542 (1973); none of these lend comfort to the position taken by the respondents. The fact that a Charleston County Airport serves travelers from other counties does not change its local status. It would hardly be argued that a Charleston County Hospital, a Charleston County Library, a Charleston County Museum, or a Charleston County Zoo, is not a local county function merely because it served the needs of citizens from other counties.

In summary, we hold that act bearing Ratification No. R-297 of the 1975 Acts of the General Assembly is violative of Article VIII, § 7, of our Constitution, because it is legislation for a specific county. Having so held, it becomes unnecessary to discuss the other exceptions raised by the Appellant.

The Defendants-Respondents are enjoined from issuing bonds provided in the act.

Reversed.

NESS and RHODES, JJ., concur.

LEWIS, C. J., and GREGORY, J., dissent.

GREGORY, Justice:

We respectfully dissent.

Appellant brings this suit pursuant to the Declaratory Judgment Act, § 10-2001 *et seq.*, 1962 South Carolina Code of Laws, on behalf of herself and all taxpayers and property owners in the Charleston County Airport District (hereinafter District) seeking to have declared unconstitutional the act authorizing issuance of Twelve Million, Six Hundred Thousand ($12,600,000.00) Dollars of General Obligation Bonds by the District and the imposition of *ad valorem* taxes for payment thereof. She further seeks to enjoin the governing authority of the District from issuing the bonds. Finding no constitutional infirmities in the bond act, we would affirm the order of the lower court authorizing issuance of the general obligation bonds.

The action was commenced in the Charleston County Court of Common Pleas by the filing of a Summons and Complaint on August 4, 1975.

The respondents included the members of the Charleston County Aviation Authority, the Charleston County Airport District, and the Attorney General of the State of South Carolina.

On motion of the appellant, an Order of Publication dated August 9, 1975 was issued giving notice of the institution of this action and advising that any interested person might seek to intervene within twenty (20) days following the date of publication. No one sought to intervene.

The respondent Daniel R. McLeod, as Attorney General of the State of South Carolina, was dismissed as a party on his motion with the consent of the remaining parties by Order dated September 29, 1975.

The Charleston County Airport District was created by Act No. 1235 of the 1970 Acts of the South Carolina General Assembly. When created, the District was coterminous with Charleston County. The Charleston County Aviation Authority (hereinafter the Authority) was established as the governing body of the District to carry out its function of acquiring, constructing, operating, and maintaining an adequate airport for the District.

The Bond Act at issue here (bearing Ratification No. R-297, enacted by the 1975 Session of the General Assembly) authorizes the Authority to issue and sell Twelve Million Six Hundred Thousand ($12,600,000.00) Dollars of General Obligation Bonds of the District for the acquisition and construction of improvements and renovations to airport facilities within the District. In enacting the Bond Act, the legislature made the following findings of fact:

"The General Assembly now finds that the airport facilities of the district serve the people of an important segment of the state, and that while the tax burden of supporting

those facilities falls upon an area coterminous with Charleston County, it is nevertheless the corporate purpose of the district to provide air transportation facilities which are required by the residents in Charleston, Berkeley and Dorchester Counties as well as areas adjoining thereto."

The Authority's present plan is to acquire the existing Charleston Airport owned and operated by the City of Charleston in pursuit of its goal to provide modern air navigation facilities for the southeastern part of the State.

Appellant contends that the Bond Act is unconstitutional on three grounds: [1]

(1) The Act violates Section 7 of New Article VIII of the State Constitution, ratified on March 7, 1973, which appellant contends requires the General Assembly to vest by general law in county governments the function of operating, maintaining and improving airport facilities;

(2) The Bond Act is a special law where a general law can be made applicable in violation of Subdivision IX, Section 34 of Article III of the South Carolina Constitution;

(3) The Bond Act constitutes a denial of equal protection and due process with respect to taxpayers of the District on the ground that the District taxpayers are subjected to a tax levy to finance entirely the cost of facilities which will also directly benefit persons of adjoining counties.

The Complaint also challenged the validity of an amendment to Article X, Section 5 of the South Carolina Constitution ratified at the 1975 Session of the South Carolina General Assembly which raised the District's debt limit from eight percent (8%) to twenty percent (20%), but this challenge was abandoned at the hearing before the circuit judge.

A hearing was held before the Honorable Wade S. Weatherford, Jr., Presiding Judge, on September 23, 1975 at which time the matter was fully argued.

By Order dated September 29, 1975, Judge Weatherford held that the operation of the airport facilities as proposed by the Authority did not constitute a county function within the meaning of Article VIII, Section VII, nor was the Bond Act a special act in violation of Subdivision 9, Section 34 of Article III of the South Carolina Constitution. He further held that the imposition of a tax pursuant to the Bond Act would not constitute a denial of due process and equal protection to the taxpayers of the District. The matter comes before this Court on exception of such an Order.

Appellant's first contention is that the Bond Act is prohibited by Article VIII, Section 7, which follows:

"The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental service provided. Alternate forms of government, not to exceed five, shall be established. No laws for a specific county may be enacted and no county shall be exempted from the general laws or laws applicable to the selected alternative form of government."

We faced a similar issue in *Kleckley v. Pulliam,* 265 S. C. 177, 217 S. E. (2d) 217 (1975), wherein appellant sought to enjoin the Richland-Lexington Airport Commission from issuing general obligation bonds to finance the Columbia Metropolitan Airport. In upholding the bond act in *Kleckley, supra,* then Chief Justice Moss, speaking for the Court, construed the Article VIII, Section 7 prohibition against the General Assembly enacting laws for a specific county to mean laws which relate to those powers, duties, functions, and responsibilities, which under the mandated system of government, are set aside for counties. In *Kleckley, supra,* we recognized the establishment and operation of an airport was permitted to the counties under Article X, Section 6; but finding that the Columbia Metropolitan Airport involved there subserved a governmental function greater than that

of a county, we held that the plenary power of the General Assembly insofar as that challenged bond act was concerned had not been curtailed by Article VIII, Section 7.

Appellant seeks to distinguish *Kleckley, supra,* on the ground that there were two counties composing the district carved out to finance the airport there, but only one here. She concedes the power of the General Assembly to create special purpose districts for permissible public services but only "so long as the political subdivision which is the vehicle of delivery is not solely within the confines of a single county." Appellant cites no authority for this proposition and we know of none.

The District is a separate and distinct political subdivision even though its territory is coterminous with Charleston County. *Berry v. Milliken,* 234 S. C. 518, 109 S. E. (2d) 354 (1959). The General Assembly may establish such a taxing district entirely within a county, consisting of an entire county, consisting of all or parts of several counties, or consisting of several counties. *Smith v. Robertson,* 210 S. C. 99, 41 S. E. (2d) 631 (1947). The area taxed does not in itself determine the applicability of Article VIII, Section 7. Applicability of Article VIII, Section 7 is determined by the function to be performed. If it is an exclusive county function, one set aside under one of the mandated forms of government to counties, or one belonging peculiarly to counties, Article VIII, Section 7 prohibits the General Assembly from providing it by enacting special laws for a specific county.

The following pertinent information with respect to the Charleston Airport to be acquired by the District was established before the lower court and set forth in its order:

"The origin and destination figures for passengers using certified air carriers at the Charleston Municipal Airport was 606,840. Comparable figures for Greenville-Spartanburg Airport was 457,250, and for Columbia Metropolitan Airport 637,400.

"347,731 Passengers originated in Charleston and were enplaned. at Charleston Municipal Airport aboard certified carriers during that period. During the same period comparable figures for Greenville-Spartanburg Airport was 247,018, and for Columbia Metropolitan Airport 356,689.

"The Charleston Municipal Airport ranks No. 73 in size using a total of 724 airports certified by the Civil Aeronautics Board in the United States. Greenville-Spartanburg Airport is No. 85 and the Columbia Metropolitan is No. 70.

"Seven airports in South Carolina are certified to serve scheduled airlines, namely: Charleston, Columbia, Greenville, Anderson, Greenwood, Florence and Myrtle Beach. Those other than Charleston, Columbia and Greenville-Spartanburg serve only a small number of passengers, the aggregate for the period being only 74,876 passengers.

"More air freight cargo was enplaned at Charleston Municipal Airport than at any other airport in South Carolina except Columbia Metropolitan Airport. The Charleston Municipal Airport is part of a nationwide system of airports and is included in the National Airport Plan, and a part of the State of South Carolina System of Airports.

"The Charleston Municipal Airport is the principal air transportation facility for those persons residing in the southeastern portion of South Carolina and meets the principal air transportation needs of those persons residing in a six county area in southeastern South Carolina.

"Due to the fact that the Charleston Airport is used under a joint use agreement with the United States Air Force, there are more airplane operations at this airport than at any other in the State of South Carolina and in this respect it is one of the busiest airports in the entire southeastern United States.

"Charleston is served by more certified air carriers than any other airport in South Carolina. These include Eastern

Airlines, Delta Airlines, National Airlines, Southern Airlines and Piedmont Airlines.

"Charleston Airport is the only one in South Carolina in which a considerable number of people initiated international trips. However, this is not a significant portion of the total passenger traffic unless military passenger enplanements on certificated supplemental air carriers are considered.

"Approximately 17% of the people living and residing in the State of South Carolina are served by the Charleston Airport."

On the basis of the facts established, the proposed air navigation facilities to be provided by the District cannot be distinguished from those in *Kleckley, supra,* insofar as subserving a governmental function greater than that of a county and our holding there is controlling here.

"[S]ince the governmental purpose under the Act establishing the [Richland County-Lexington Airport] District is not one peculiar to a county, the power of the General Assembly to legislate for this purpose continues, despite Article VIII, Section 7." *Kleckley, supra,* 265 S. C. at 185, 217 S. E. (2d) at 221.

The second question raised by appellant is whether the Bond Act violates Article III, Section 34 (IX). A similar argument was advanced in *Berry v. Milliken, supra,* about legislation creating the Greenville-Spartanburg Airport and again in *Kleckley, supra,* concerning the financing of Columbia Metropolitan Airport. It was argued in both cases that since Article X, Section 6 permitted a county to establish and maintain an airport, the General Assembly could not create a special district for that purpose since ratification of Article VIII, Section 7. In upholding both acts for the establishment of those airports serving state needs, we pointed out that the mere existence of permissive legislation to accomplish a particular result does not of itself prevent the General Assembly from operating in that area. *Kleckley, supra,* 265 S. C. at 184-185, 217 S. E. (2d) at 220-221.

As in *Kleckley,* the General Assembly determined that it would not be feasible for instant airport to be operated by Charleston County by itself or in conjunction with other counties and desired and created an airport district with more comprehensive power than one owned and operated by the city or county, or several counties could have. Again appellant seeks to distinguish our holdings in *Kleckley* on the basis that the special district there was comprised of two counties whereas here the District is comprised of but one county. We do not find that distinction in itself controlling.

Appellant's next contention is that the imposition of a tax solely upon the taxpayers of the District to finance entirely the cost of facilities which will directly benefit Charleston, Berkeley and Dorchester Counties denies the taxpayers of the District equal protection and due process guaranteed by the South Carolina and United States Constitutions.

The case at hand presents a unique fact pattern. The usual case involves a challenge by a taxpayer in an outlying area of a district who complains that she is denied due process by the imposition of a tax upon the entire district to provide services of which she receives none or too little benefit. *Wright v. Profitt,* 261 S. C. 68, 198 S. E. (2d) 275 (1973). In the instant case, appellant complains that although she receives substantial benefits she is denied due process and equal protection by being required to bear the total tax burden when other areas outside the district also receive substantial benefits and bear none of the tax burden.

It is well settled that the State can carve out a district from a territory of the State and tax the residents thereof for the accomplishment of a public purpose. *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. (2d) 88 (1947) ; *Berry v. Milliken, supra; Kleckley v. Pulliam, supra.* The standard of judicial review of such legislative acts is necessarily stringent. One seeking to declare such public works legislation unconstitutional on equal protection and due process grounds must show that the tax im-

posed to finance the works is a flagrant abuse of the taxing power. *Houck v. Little River Drainage District,* 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266 (1915); *Mills v. Hawkins,* 232 S. C. 515, 103 S. E. (2d) 14 (1957).

In support of her contentions appellant points out that the airport is located where the Berkeley, Dorchester and Charleston County lines converge. She alleges that the bulk of the population of Dorchester and Berkeley Counties are better served in terms of convenience than some outlying areas of the District. The enhancement of property values and expansion of support facilities and light industry which the airport will reasonably expect to attract must benefit areas of Berkeley and Dorchester. Part of the primary trade area of the airport encompasses Berkeley and Dorchester Counties as well as Charleston County.

The record reveals much in support of the legislative choice of District boundaries. The undeveloped land on which the terminal will be situated lies to the south of and adjacent to the airport and the prime locations for development are in the District. The U. S. Naval Shipyard, the Charleston Air Base, the U. S. Corps of Engineers and the U. S. Coast Guard are all located in the District and they generate the majority of air passenger traffic. These are the largest employers of people living in the District and the airport improvements would make Charleston County even more attractive to military and civilian personnel connected with these employers. The people of the District, being more numerous than those outside, will make greater use of the airport and thus derive more direct benefit than those outside the District. Special benefits accruing to the District include attracting commercial and industrial development, improvement of the existing trade, and the ownership and control of the airport facilities.

These facts are sufficient grounds to support the legislature's classification of the District to bear the tax burden of the airport, although it be coterminous with Charleston

County. It is not sufficient to say its boundaries could have been better drawn, but rather the ones selected must be shown to be arbitrary and to constitute "Palpable abuse" by legislative action. The record before us does not sustain this burden of proof and we must therefore overrule the instant exception.

While it may seem contradictory to hold that the reason the Legislature can provide the airport by special legislation creating a district is because its function subserves a multi-county need while at the same time upholding the Bond Act which imposes the cost thereof entirely on the residents of Charleston County, that is what we must do. It is not our function to make laws but interpret them.

". . . A statute will, if possible, be construed so as to render it valid; that a legislative act will not be declared unconstitutional unless its repugnance to the Constitution is clear and beyond reasonable doubt; that every presumption will be made in favor of the constitutionality of a legislative enactment; that it will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution; that all reasonable presumptions must be made in favor of the validity of the Act; and that the Constitution of South Carolina is a limitation upon, rather than a grant of, legislative power." *Clarke v. South Carolina Public Service Authority,* 177 S. C. 427, 181 S. E. 481 (1935).

The creation of this District was an act of sovereignty for which we see no present constitutional limitation.

We would affirm.

Lewis, C. J., concurs.