23789

FORT HILL NATURAL GAS AUTHORITY, Appellant v. CITY OF EASLEY, the Town of Liberty, the Town of Clemson, and the Town of Seneca, Respondents.

(426 S.E. (2d) 787)

Supreme Court

*James L. Williams*, of *Derrick, Ritter & Williams, P.A.*, and *Lowell W. Ross*, of *Ross, Stoudemire & Awde, P.A.*, Seneca, *for appellant.*

*D. Garrison Hill* and *Leo H. Hill*, both of *Hill, Wyatt & Bannister*, Greenville, *for the respondent, City of Easley.*

*Paul E. Bowie, III*, of Pickens, *for respondent, Town of Liberty.*

*N. Gruber Sires, Jr.*, Seneca, *for respondent, Town of Clemson.*

*Michael J. Smith*, Seneca, *for respondent, Town of Seneca.*

*Roy D. Bates*, Columbia, *amicus for Mun. Ass'n. of South Carolina.*

Heard Dec. 9, 1992.

Decided Feb. 1, 1993.

TOAL, Justice:

The issue presented in this appeal is whether the trial court erred in interpreting the Fort Hill Natural Gas Authority (hereinafter "Authority") enabling act as requiring all profits not contracted for or under covenant to be disbursed to the Authority's member towns. We affirm.

## FACTS

The Fort Hill Natural Gas Authority was created by the legislature in 1952. 1952 S.C. Acts 799 (hereinafter "Act"). At that time, the Transcontinental Gas Pipe Line Company maintained a transmission line extending through northwestern South Carolina. The towns of Easley, Liberty, Central, Clemson, Williamston, and Seneca proposed making an application to the Federal Power Commission to require Trans-continental to furnish each of the towns an allotment of natural gas for their inhabitants and those of the surrounding environs. The legislature recognized that the most economical method by which the towns could avail themselves of the gas would be if the allotment were granted through the construction of a transmission line system which would be designed to serve all of the above-named towns as well as any other nearby towns that might also receive an allotment in the future. Accordingly, the legislature created the Authority to serve as a common entity to oversee this system's construction, financing, maintenance, and operation.[1] 1952 S.C. Act 799 Pmbl. at 1987. To effectuate its purpose, the Authority is given broad powers, including the ability to borrow money and issue negotiable bonds, notes, and other evidence of indebtedness, payable from anticipated revenues from the system's operation. *Id.* § 5 at 1990-92. The original system was financed through the issuance of negotiable bonds. All bonds, however, were paid in full in 1985, leaving the Authority virtually debt-free until 1991.

---

[1] The Fort Hill Authority was one of several similar entities created throughout the state during this time period. *See e.g.,* 1952 S.C. Acts § 789 (creating the Clinton Newberry Natural Gas Authority).

In 1989, the board, which operates as the governing body of the Authority, anticipated that a new pipeline would be required in 1992 at a cost of $5,000,000. Accordingly, the board "set aside" $1,000,000 in 1989 for the construction of the new pipiline. In 1990, the board "set aside" an additional $2,000,000 for the same purpose. The board intended to reserve an additional sum of $2,000,000 in 1991 and build the pipeline in 1992, completely financed with this cash reserve. However, the pipeline became necessary in 1991. Accordingly, the board financed the additional $2,000,000.

Section 6 of the Act provides:

> *All net reserves derived from the system, whose disposition the authority shall not have covenanted or contracted to otherwise dispose of, shall be paid over to the municipalities which shall be member towns of the authority in the proportion that the sale of firm gas within the corporate limits of each member town bears to the aggregate sales of firm gas within the corporate limits of all member towns,* provided, that the authority may impose upon municipalities becoming member towns subsequent to the completion of the project suitable conditions designed to require such member towns to pay their equitable share of the cost of the project.

1952 S.C. Acts 799 § 6.

It is undisputed there was no contract formed nor any covenant entered into regarding the funds set aside by the board until 1991. The Authority disbursed some funds to the towns during 1989 and 1990. However, the amount disbursed some years was arbitrarily determined after money was set aside for the anticipated pipeline.

In 1990, the Authority brought this action seeking a declaratory judgment contesting the validity of an ordinance of the City of Easley. This claim is not an issue in this appeal. The City of Easley counterclaimed, alleging the Authority exceeded its power by reserving funds which should have been disbursed to the member towns under section 6 of the Act. The towns of Clemson, Seneca, and Liberty (hereinafter collectively "Towns") intervened. The matter was referred to a Special Referee with finality.

The Referee granted the Towns' motion for directed verdict

at the close of all the evidence. The Referee found section 6 of the Act clearly and unambiguously required the Authority to disburse to the Towns net revenues that were not subject to any contract or covenant. The Referee further declared this interpretation precluded any argument that the Authority had implied power to reserve funds for future capital expenditures. Accordingly, the Referee awarded the Towns $2,000,000 to be paid over several years.[2] The Authority appeals.

## LAW/ANALYSIS

The purpose of construction of a statute is to ascertain the legislative intent from the words used, and if they are susceptible to any sensible meaning, the court cannot add to them other words which would give them a different meaning without making, instead of construing, the statute. *Independence Ins. co. v. Independent Life & Acc. Ins. Co.*, 218 S.C. 22, 61 S.E. (2d) 399 (1950). The rule that the court must apply a plain and unambiguous statute literally yields only when the application of the rule would produce absurd results. *Martin v. Ellisor*, 266 S.C. 377, 223 S.E. (2d) 415 (1976).

Section 6 of the Act clearly requires all net revenues not subject to a contract or covenant to be disbursed to the Towns. Furthermore, this mandate is wholly consistent with the purpose of the Act which was to provide the area with the most economical method of securing gas for the Towns and the surrounding area's inhabitants. The Towns, by becoming members of the Authority, have relinquished their right to operate a municipal gas system and receive any profits which might be derived from such a system. Accordingly, as the preamble to the Act clearly indicates, the Authority is charged with the responsibility to operate and maintain the system "for the benefit of the municipalities which it serves ...." 1952 S.C. Acts § 799 at 1987.

The Authority maintains that interpreting section 6 literally and requiring the Authority to divest itself of all net profits creates absurd results not intended by the legislature. The Authority's current balance sheets show equity of over

---

[2] The Referee found the Towns only sought $2,000,000. The Towns have not appealed the amount of the award.

$24,000,000. Thus, the Authority is far from penniless. Additionally, the Authority enjoys a steady cash flow of over $600,000 each month. The Authority is given plenary power to borrow money and issue bonds for capital improvements. *Id.* § 5(s). Finally, several experts in the field of utility management and economics testified the ability to set aside funds without a contract or covenant was not essential to the Authority's financial well-being.

Accordingly, we see no justification to alter what we find is the plain and unambiguous directive of the Act. We agree with the Towns; the Authority did not have the power to withhold net revenues as they did in 1989 and 1990. Thus, we affirm the order of the Referee. If the Authority feels that section 6, requiring divestment of revenues, is unwise or substantially interferes with its operation of the system, its proper recourse is to seek an amendment from the legislature. *Manufacturers Finance Acceptance Corp. v. Bramlett,* 157 S.C. 419, 154 S.E. 410 (1930) (the power to change a statute rests with the lawmaking body). In that regard, we note that any amendment to this statute would not violate Article VIII, Section 7 of the South Carolina Constitution, as the Authority extends beyond the confines of one county. *Kleckley v. Pulliam,* 265 S.C. 177, 217 S.E. (2d) 217 (1975).

Affirmed.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, J.J., concur.