# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

County of Florence and Florence County Council,
Respondents,

v.

West Florence Fire District, purported to have been created by S.C. Act No. 183 of 2014, the West Florence Fire District Commission, purported to have been created by S. C. Act. No. 183 of 2014, David Brown, Dustin Fails, Linda Lang Gipco, Richard Hewitt and C. Allen Matthews, each in his or her purported official capacity as a member of the West Florence Fire District Commission and the State of South Carolina, Defendants, of whom West Florence Fire District, purported to have been created by S.C. Act No. 183 of 2014, the West Florence Fire District Commission, purported to have been created by S. C. Act. No. 183 of 2014, David Brown, Dustin Fails, Linda Lang Gipco, Richard Hewitt and C. Allen Matthews, each in his or her purported official capacity as a member of the West Florence Fire District Commission are Appellants.

Appellate Case No. 2017-000693

———————————

Appeal from Florence County
J. C. Nicholson, Jr., Circuit Court Judge

———————————

Opinion No. 27776
Heard December 13, 2017 – Filed March 7, 2018

———————————

## AFFIRMED

Blake A. Hewitt, of Bluestein Thompson Sullivan LLC, of Columbia and Wallace H. Jordan, Jr., of Florence, for Appellants.

Steve A. Matthews, of Haynsworth Sinkler Boyd, P.A., of Columbia and D. Malloy McEachin, Jr., of McEachin & McEachin, P.A., of Florence, for Respondents.

Attorney General Alan Wilson and Deputy Solicitor General J. Emory Smith, Jr., for Defendant, State of South Carolina.

**JUSTICE HEARN:** In this declaratory judgment action, Florence County challenges the validity of the West Florence Fire District, arguing that it violates this Court's decision in *Wagener v. Smith*, 221 S.C. 438, 71 S.E.2d 1 (1952) and conflicts with the state's constitutional provisions concerning special legislation and home rule. *See* S.C. Const. art. III, § 34, and S.C. Const. art. VIII, § 7. The circuit court held in favor of Florence County on all three grounds, and the West Florence Fire District appealed. We affirm on Article VIII, section 7 grounds.

## FACTUAL BACKGROUND

Prior to 2014, Florence County (the County) operated several special tax districts to fund fire protection services provided by not-for-profit fire departments. Each district implemented its own capital expense programs and bore responsibility for its own expenditures. To fund these services, the County assessed a millage rate based on ad valorem property taxes within each district, resulting in different millage rates between districts. For example, shortly before the County restructured the districts, residents in West Florence were taxed at a rate of 8 mills while Johnsonville residents were taxed at a rate of 40 mills.

In 2014, in an effort to reform the method for financing fire protection services, the County hired a firm to analyze and recommend improvements to the existing scheme, one of which was to consolidate the districts into one district to achieve a more equitable millage rate scheme and to ensure adequate funding. Under

the consolidated district, the County planned to assess a unified rate and provide more administrative oversight in an effort to lower millage rates for many residents, cut the insurance premiums for the district, and enact a more equitable funding scheme. However, while the proposal expected to curtail the high millage rates for many residents, the rate in West Florence would nearly triple.

The County conducted public hearings and, over the course of a few months, garnered enough public support for the consolidation proposal. However, residents of West Florence, upset about their increased millage rate, looked to their representatives in the General Assembly for help. In response, the General Assembly passed Act No. 183 in the spring of 2014 (the Act), creating the West Florence Fire District which encompassed part of Florence County—mainly West Florence—and a negligible portion of Darlington County that consisted of the right-of-way along a one-mile stretch of Interstate 95 and three small parcels of land adjacent to the interstate.

The General Assembly explained the purpose of the Act, stating:

> [T]hat a certain portion of Darlington County primarily consisting of Interstate 95 from the Florence County line northward to Exit 169 in Darlington County is presently served by fire departments in Florence County because no fire department in Darlington County provides service to this area. This therefore presents *concerns for the safety and well-being of citizens residing and traveling in this area in addition to placing additional burdens on fire personnel in Florence County which are called on to provide fire service in this area.* The General Assembly has therefore determined to create a joint county fire district in the same manner other joint county fire districts have been established pursuant to this chapter, *consisting of areas in two counties*, to solve this problem, and to provide fire service to all areas of the district on the most economically feasible basis possible.

S.C. Code Ann. § 4-23-1000 (Supp. 2017) (emphasis added). When the County challenged the constitutionality of the Act, the General Assembly reacted by passing an amendment (Amended Act) that: (1) clarified the precise boundary of the district; (2) added part of a neighborhood in Darlington County[1] to the district; (3) transferred property from the prior district to the West Florence District; and (4) included a

---

[1] The neighborhood consists of about 100 lots and straddles the Darlington and Florence County lines.

sunset provision whereby the amendment would expire five years after its effective date.

In response, the County filed a declaratory judgment action, arguing both the Act and the Amended Act were unconstitutional under Article VIII, section 7, Article III, section 34, and *Wagener*. The West Florence District countered that statutes are presumed constitutional and the County had failed to meet its burden in demonstrating otherwise. The circuit court ruled in favor of the County on all three grounds. First, the court held *Wagener* prohibited the General Assembly from establishing an entity that provided the same service in an area served by Florence County, noting that the rule was applied to a special tax district in *North Carolina Electric Membership Corporation. v. White*, 301 S.C. 274, 391 S.E.2d 571 (1990) (holding that a city council could not create a special tax district to perform water and sewage services in the same area where the General Assembly had previously created a special purpose district). Second, the circuit court found the Act violated the rule against special legislation under Article III, section 34. Lastly, the circuit court held Article VIII, section 7's prohibition against laws for a specific county rendered the legislation unconstitutional, even though three parcels of Darlington County were included.

## STANDARD OF REVIEW

A party challenging the constitutionality of a statute has a high hurdle to overcome because all statutes are presumed constitutional. *Curtis v. State*, 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001). Furthermore, "[A] legislative enactment will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the constitution." *Westvaco Corp. v. S.C. Dep't of Revenue*, 321 S.C. 59, 62–63, 467 S.E.2d 739, 741 (1995).

## DISCUSSION

The West Florence District contends the Act does not violate Article VIII, section 7 because the district encompasses more than one county. Moreover, it argues the circuit court improperly weighed the wisdom of the legislation, thereby encroaching on the prerogative of the General Assembly. On the other hand, the County asserts the negligible portion of Darlington County does not transform what is essentially a special purpose district for West Florence into a multicounty district. Additionally, the County claims the circuit court did not impermissibly weigh the wisdom of the legislation; instead, the court merely inquired into the territorial

composition of the West Florence District to determine whether there was sufficient regional impact to constitutionally justify its creation.

We begin by recognizing the General Assembly's plenary power to enact legislation. *Hampton v. Haley*, 403 S.C. 395, 403, 743 S.E.2d 258, 262 (2013) (citing *Clarke v. S.C. Pub. Serv. Auth.*, 177 S.C. 427, 438–39, 181 S.E. 481, 486 (1935) ("[T]he General Assembly has plenary power over all legislative matters unless limited by some constitutional provision.")). One constitutional limitation is commonly referred to as "home rule," which this Court has recognized as a means to determine how power is allocated between the General Assembly and local governments. *See Williams v. Town of Hilton Head Island*, 311 S.C. 417, 422, 429 S.E.2d 802, 804–05 (1993) (citing *Southern Bell Telephone and Telegraph Company v. City of Aiken*, 279 S.C. 269, 271, 306 S.E.2d 220, 221 (1983) ("Article VIII of the South Carolina Constitution was completely revised for the purpose of accomplishing home rule; thus granting renewed autonomy to local government.")). Prior to the 1970s, "Columbia [was] the seat of county government," as the General Assembly had the power to control local functions. *Knight v. Salisbury*, 262 S.C. 565, 571, 206 S.E.2d 875, 877 (1974). However, the state constitution was amended to reverse this allocation of power,[2] and under Article VIII, section 7, the General Assembly cannot enact legislation "relating to a specific county which relates to those powers, duties, functions and responsibilities, which under the mandated

---

[2] Addressing special purpose districts within a county, the Court in *Knight* warned:

> There is a sound reason for curtailing the power of the General Assembly to create special purpose districts within a county. If, despite the prohibition of laws for a specific county, the General Assembly may continue to carve a given county into special purpose districts, a frightful conflict would exist between the power of the General Assembly and the power of the county government. Each county could be carved into enumerable special districts. Commission[s] or other agencies might be established for each, with each given the power to perform a function intended to have been vested in the county government. Such a result could well be chaotic and home rule intended by Section 7 would be frustrated in whole or in part since the result could well be that the governing body in each county contemplated by the draftsmen of Section 7 would have little or no power left. To point out the potential results of such a theory compels its rejection.

*Knight*, 262 S.C. at 572–73, 206 S.E.2d at 878.

systems of government, are set aside for counties." *Kleckley v. Pulliam*, 265 S.C. 177, 183, 217 S.E.2d 217, 220 (1975). This transfer of power "reflects a serious effort upon the part of the electorate and the General Assembly to restore local government to the county level." *Knight*, 262 S.C. at 569, 206 S.E.2d at 876. While Article VIII, section 7 did not dissolve pre-home rule special purpose districts, it does apply to legislation enacted post-home rule that concerns a special purpose district created prior to the rule. *Spartanburg Sanitary Sewer Dist. v. City of Spartanburg*, 283 S.C. 67, 80, 321 S.E.2d 258, 265 (1984).

South Carolina jurisprudence is clear that a special purpose district limited to one county violates home rule. In *Knight*, the Court held that a special purpose district established by the General Assembly and limited to providing recreational facilities in a portion of Dorchester County was unconstitutional because it violated Article VIII, section 7. *Knight*, 262 S.C. at 572, 206 S.E.2d at 878. In discussing home rule, the Court noted, "It is clear that Section 7 sought to put an end to this practice, at least insofar as it relates to special purpose districts within a given county." *Id.* However, the Court expressly left open the question of whether Article VIII, section 7 prevents multicounty special purpose districts. *Id.* at 573, 206 S.E.2d at 878.

The Court again addressed the limits of home rule in *Kleckley*, which involved a pre-home rule special purpose district funded in part by legislation enacted after home rule. In that case, the Court denied an Article VIII, section 7 challenge to legislation that funded improvements to airport facilities within the Richland-Lexington Airport District. *Kleckley*, 265 S.C. at 180, 217 S.E.2d at 218. In order to fund the improvements, the General Assembly imposed an annual ad valorem tax on property within the district. *Id.* In response to a taxpayer lawsuit claiming the legislation violated Article VIII, section 7, the Court upheld the provision because it concerned two counties, and more significantly, because the district's purpose triggered a state-wide interest rather than a purely local concern limited to one county. *Id.* at 185, 217 S.E.2d at 221. Emphasizing the importance of the airport district as a state interest, the Court ultimately held the legislation was "not a county *function* within the meaning of Article VIII, Section 7, but one of state concern." *Id.* at 187, 217 S.E.2d at 222 (emphasis added). Thus, the Court weighed the *function* of the district more heavily than the territorial boundary.

Just one year after *Kleckley*, the Court reached a different conclusion in *Torgerson v. Craver*, 267 S.C. 558, 563, 230 S.E.2d 228, 230 (1976), which also involved funding for facilities within an airport district. This time the Court relied heavily on the fact that the Charleston County Airport District was solely within Charleston County. *Id.* at 563, 230 S.E.2d at 230. Additionally, the Court stated that

although the airport served travelers from across the region, the county was capable of solving any problems within the district, unlike in *Kleckley*, where neither Richland nor Lexington County alone could regulate the district. *Id.* While the physical boundary of the district was important, the Court clarified its holding in *Kleckley*, noting that the bond legislation in *Kleckley* was not for a specific county but rather for a *region*.

*Kleckley* and *Torgerson* demonstrate the conjunctive nature of the analysis—in determining whether legislation violates home rule, a district's physical boundaries *and* function must be taken into account. In this case, the West Florence District relies in part on a 2011 South Carolina Attorney General's opinion that focuses almost entirely on the district's physical boundary. S.C. Att'y Gen. Op. dated Apr. 25, 2011 (2011 WL 1740746). Addressing the South Lynches Fire District, the 2011 opinion reversed an earlier opinion which concluded that district was probably unconstitutional. *Id.* (reversing S.C. Att'y Gen. Op. dated June 16, 1983 (1983 WL 181917)).

The 2011 opinion acknowledged earlier attorney general opinions that suggested the Court's decisions in *Kleckley* and *Torgerson* stood for the proposition that the nature of the service—whether regional in scope or purely local—*and* physical territory are both important in the analysis. *Id.* However, the 2011 opinion articulated the principle that only physical territory is relevant in determining whether Article VIII, section 7 is violated. Nevertheless, the 2011 opinion addressed a fire district split approximately 60% in Florence County and 40% in Williamsburg County. We find that scenario readily distinguishable from the instant case, where the vast majority of the challenged district is located in one county and only a comparatively small portion is located in an adjacent county.[3]

Moreover, the Court noted in *Kleckley* that since the General Assembly could not legally pass a special act to curtail the governing body's county-wide powers, it was likewise impermissible for the General Assembly to achieve the same result indirectly. *Kleckley*, 265 S.C. at 184, 217 S.E.2d at 220. Here, home rule precludes legislation of fire protection services specific to West Florence. *See* S.C. Code Ann. § 4-9-30(5) (1986 & Supp. 2017) (stating fire protection services are part of a county government's enumerated powers); S.C. Code Ann. § 4-19-10 (1986 & Supp. 2017) (enacting the Fire Protection Services Act). Therefore, it follows the General Assembly cannot indirectly accomplish the same goal merely by adding a small

---

[3] It appears from the record that the three parcels in Darlington County total one-tenth of a square mile and represent less than 1% of the district.

amount of acreage of another county; to do so would render Article VIII, section 7 meaningless. *Kleckley* and *Torgerson* demonstrate that where the legislation's function is local and within a county, home rule mandates the County is the proper body to address the matter rather than the General Assembly.

Accordingly, we find the Act creating the West Florence District violates home rule. Because our analysis of Article VIII, section 7 is dispositive, we decline to reach the district's remaining two grounds for reversal. *Young v. Charleston Cty. Sch. Dist.*, 397 S.C. 311, 310, 725 S.E.2d 107, 111 (2012) (declining to address additional grounds after reaching a dispositive issue).

## CONCLUSION

In summary, we affirm the circuit court and hold the creation of the West Florence District violates Article VIII, section 7 of the South Carolina Constitution because the district is not truly a multicounty district. To hold that including three parcels—totaling one-tenth of a square mile—is sufficient to remove the legislation from the purview of section 7 would eviscerate home rule.

Accordingly, we **AFFIRM** and **REMAND** the matter to the circuit court for its approval of a plan to transition the district to county control.

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**