16490

NESBITT *ET AL.* v. GETTYS *ET AL.*

(64 S. E. (2d) 651)

222

*Messrs. J. Claude Fort* and *J. H. Hall,* of Gaffney, and *Butler & Moore,* of Spartanburg, *for Appellant,*

*Messrs. Holcombe & Bomar,* of Spartanburg, *for Respondent,*

April 9, 1951.

STUKES, Justice.

This is a taxpayer's action assailing the validity in specified particulars of Act No. 785 of the General Assembly, approved March 20, 1950, 46 Stat. 1964, entitled, "An Act To Establish A Consolidated High School District In Cherokee County; To Prescribe The Rights, Duties And Obligations Of Said Districts; To Provide For The Election Of Trustees And The Terms Of Office; To Prescribe Their Duties And Powers; To Transfer Certain Property And To Make Certain Appropriations And Certain Transfers Of Funds In Order To Accomplish The Objects Of The Consolidation."

Gaffney School District No. 10 was already operating a high school, with a valuable plant including a high school building which was constructed and completely equipped in 1923 for $212,027.89 including cost of lot and landscaping, which was met with part of the proceeds of $300,000.00 bond issue of the district. Outstanding of that issue was $120,000.00 at the time of the commencement of this action. The remaining proceeds of the issue were used for non-high school purposes and it is fairly calculated by simple proportion that $84,000.00 of the outstanding bonds is allocable to the cost of the high school building, lot and equipment. These figures are derived, and the result reached, from the records of the county treasurer, to which he testified in this action. There are comparatively small adjunct buildings for athletic, workshop and cannery purposes which were constructed by use of current funds and federal aid of which no records are in evidence, but their aggregate value is little in relation to the three-story main building of twenty-eight classrooms, auditorium and other facilities.

The Act creates Gaffney High School District No. 11 by a consolidation of Gaffney No. 10 and ten small outlying districts, with provision that any other districts, or parts, in the county and west of Broad River may hereafter elect to become a part of the consolidated High School District No. 11 under the law applicable to the consolidation of school districts. Of the newly created high school district, Gaffney No. 10 includes approximately two-thirds of the taxable

property, and the ten outlying districts in the aggregate about one-third; and the homes of the pupils presently attending the high school are located in about the same proportion—about two-thirds live in Gaffney No. 10 and one-third in the outlying districts.

The following quoted further provision of the Act gives rise to the single sharp issue which is presented by the appeal: "As of the effective date of this Act, Gaffney High School District No. 11 shall assume title, in fee simple, to the present high school buildings, equipment, and grounds now operated in Gaffney District No. 10   *   *   *."

Section 3 of the Act is as follows:

"The County Treasurer of Cherokee County is hereby authorized and directed to apportion One Hundred Fifty Thousand ($150,000.00) Dollars of county surplus funds, accumulated from the state allocation of beer, wine, and liquor funds, among Blacksburg Centralized High School District No. 2, Gaffney High School District No. 11, and such other school districts not a part of a centralized high school district, in the proportion that the assessed valuation of taxable property in each district bears to the assessed valuation of taxable property in the county as a whole. Immediately after such apportionment, the County Treasurer is further authorized and directed to transfer the sum of One Hundred Thousand ($100,000.00) Dollars from Gaffney High School District No. 11 to Gaffney School District No. 10, which shall be in consideration of the transfer of high school property provided for in Section 1 above, and that it is declared that the newly created Gaffney High School District No. 11 assumes no liability as such for any existing indebtedness of the Gaffney School District No. 10."

A subsequent section authorizes the trustees of the consolidated high school district to construct and equip a junior high school and such other buildings as may be necessary to accommodate the high school students of the district, and acquire sites therefor. Act No. 1149, approved June 3, 1950,

46 Stat. 2897, authorized an election upon the issuance of bonds for this purpose by the high school district to the full extent of the constitutional limitation of eight per cent of the taxable property.

In the complaint were alleged facts included in the foregoing recital and that the present reasonable value of the high school grounds, buildings and equipment of District No. 10 is $450,000.00 and that the provision of the Act whereby the title thereto should be vested in the consolidated high school district is an unconstitutional deprivation of District No. 10 and its taxpayers of their property without due process of law and they are thereby denied the equal protection of the law, wherefore plaintiff sought adjudication that such provision is invalid and that the defendant trustees of the high school district be enjoined from exercising authority over, or claim of title to, the high school property of District No. 10.

In the order on demurrer, now reviewed on appeal, it was well said, as follows: "In considering any constitutional question, there come into play the familiar postulates of the law that the courts will, if reasonably possible, uphold the constitutionality of a statute, and will not strike down a statute unless its unconstitutionality clearly appears. It is equally well established that school districts have no inherent right of local self-government, which is beyond legislative control, *Moseley v. Welch,* 209 S. C. 19, 39 S. E. (2d) 133; and the Legislature may, within constitutional limits, establish a new high school district without the consent either of the people affected or the trustees of the constituent districts. *Walpole v. Wall,* 1929, 153 S. C. 106, 149 S. E. 760." We quote from the cited case of *Walpole v. Wall,* 153 S. C. at page 111, 149 S. E. at page 762, the following: "An examination of this act shows that a new high school district is created by legislative authority and that various administrative details are therein provided.

"The Legislature, of course, has plenary power over all such matters, and its action is not to be questioned unless in direct conflict with some constitutional limitation."

Demurrer to the complaint was overruled and upon answer the action was referred for the taking of testimony. Thereon it was adjudged that the Act is unconstitutional in the stated feature and the defendants were enjoined as prayed. It was said in the decretal order that, quoting, "The plaintiff does not question the organization of the consolidated high school district, nor its authority to operate the high school program within the district. The only issue is the constitutionality of those provisions of the Act which relate to the transfer of the high school property from District No. 10 to the new district." The order proceeded upon the premise that the payment of $100,000.00 by the newly created high school district to District No. 10 was far less than the value of the existing high school property of the latter and on that account invalid because in violation of article 1, section 5, of the Constitution, which is the due process and equal protection clause.

The judgment under review is fallacious in its concept that School District No. 10 will under the Act be separate from the consolidated District No. 11, as a stranger, whereas it is in fact not only a part thereof, but a majority, indeed about two-thirds. The evidence indicates that the value of the property in dispute is about $450,-000.00, without deduction for obsolescense, so the equalizing payment, $100,000.00, to District No. 10 will at least approximately compensate it for that which theoretically it will give up, namely, one-third of the use of the property, if this were a *sine qua non* of consolidation which it is not, as will be seen. As said above, the outlying districts which are now consolidated with No. 10 for high school purposes furnish about one-third of the high school students. These high school pupils and their predecessors have heretofore been furnished building and other facilities by District No. 10 without compensation. In other words, the

taxpayers and pupils of the outlying districts have before paid none of the costs of the high school of No. 10 which they nevertheless patronized; under the consolidation they will pay about one-third of the cost. The financial burden upon the taxpayers of No. 10, who are represented by the plaintiff in this action, will be relieved to the extent of present refund of more than the allocable unpaid principal of the high school building debt and about one-third of the cost of future building and operation of high school facilities. Instead of oppression of the taxpayers of No. 10, the plan appears to be a model of fairness and will certainly burden them less, at least proportionately, than before consolidation.

There is no true deprivation of property of School District No. 10 or its taxpayers because the high school plant will of course remain where it is, in the city of Gaffney, and continue to serve the high school pupils of No. 10, just as it has in the past, and hereafter with the added financial aid of the taxpayers of the former outlying districts in respect to future building and operational expenses of the high school. The cash payment of $100,000.00 satisfies the condition of the implication which respondent contends arises from the language of the judgment in *Burris v. Brock,* 95 S. C. 104, 79 S. E. 193, because it more than offsets the burden on No. 10 to pay the portion of its remaining bonds fairly attributable to the construction and equipment of the high school. Moreover, *Burriss v. Brock* involved a common school district and was subject to Art. XI, sec. 5, of the constitution, which is inapplicable to this high school-case. *Pursley v. Inman,* 215 S. C. 243, 54 S. E. (2d) 800. However, the reasoning and result of the *Burris case* rather support our conclusion here.

The general rule of law is that upon consolidation of municipal corporations the new corporation, which results from the consolidation, in the absence of contrary legislative provision, or agreement, takes all of the property of its constituents and becomes liable for the debts

of all. *Walker v. Bennett,* 125 S. C. 389, 118 S. E. 779. But we do not have here an ordinary or complete consolidation and we do have special legislative provisions. The consolidation is only for high school purposes and only the high school property is vested in the consolidated district; and the whole debt of the constituent, indebted district is not assumed, which is fair for the reason that it was partly incurred for non-high school purposes. Instead, the indebted district is paid $100,000.00 in cash. The general rule affecting consolidation, just adverted to, appears to have been substantially followed, certainly closely enough to make untenable respondent's contention that as a taxpayer of No. 10 he has been deprived of property without due process and is not equally protected under the law. No decided case concerning school district consolidation has been cited, and we know of none, where the consolidated district has been held to pay a component district the cost of reproduction of its school buildings and equipment, which is respondent's demand.

*Walker v. Bennett, supra,* 125 S. C. 389, 118 S. E. 779, cites many authorities which illustrate the general rule affecting consolidations. Others are: *Com'rs of Laramie County v. Com'rs of Albany County,* 92 U. S. 307, 23 L. Ed. 552; *Kies v. Lowrey,* 199 U. S. 233, 26 S. Ct. 27, 50 L. Ed. 167; *Tindall v. Byars,* 1950, 217 S. C. 1, 59 S. E. (2d) 337; *Smith v. Lexington School Dist.,* S. C. 1951, 64 S. E. (2d) 534; 47 Am. Jur. 312, Schools, Sec. 21, from which the following is quoted: "And the legislature, having plenary power over school districts, may provide for the division of the property and the apportionment of debts, when a portion of the territory and property of one district is transferred to the jurisdiction of another. A statute affecting such separation has been held not to deprive the school district of its property without due process of law, such property being held merely as trustee for the state, and there being no contract relation between the district and the state;" and annotation, 121 A. L. R. 826, in which this

editorial comment is found at page 836: "The weight of authority is to the effect that where school districts are merged or consolidated, or are annexed to another district, the property of the constituent or annexed districts passes to the consolidated or enlarged district."

The ownership by No. 10 of the high school building is a trust for educational purposes. The building is not something to be bartered or sold to personally profit or reimburse the taxpayers. *Cf.* Sec. 5345, Code of 1942. It will be no less devoted to its public trust purpose after the consolidation than before and no less benefit to the taxpayers of No. 10. It will accommodate the same pupils as before—graduates resident in No. 10 will be succeeded by beginners in high school who are similarly resident. Incidentally, the remaining bonds which were issued for its construction would have to be paid by the taxpayers of No. 10 if there were no consolidation. Their burden in that respect has not been increased, but very materially decreased by the cash payment; and in other respects it will be proportionately lightened because the taxable property added to No. 10 by the consolidation will contribute ratably to the cost of operation and future building expansion, which it has not before.

To sustain the decree of the lower court reliance is chiefly had upon *Moseley v. Welch, supra,* 209 S. C. 19, 39 S. E. (2d) 133. It is not a precedent here because it was not a consolidation case. The existing school districts were preserved under the act there and what the decision condemned as unconstitutional was the pooling of funds, surpluses and deficits, of the separate districts to create a county unit operating fund; and to tax debt-free districts to help pay the debts of other unconsolidated debt-ridden districts. The financial picture there presented was very different from that here. The *Moseley case* was similarly differentiated in *Smith v. Lexington School District,* 1951, *supra, Ward v. Cobb,* 204 S. C. 275, 28 S. E. (2d) 850, also needs to be distinguished from the case in hand. It was not a school case.

An entirely different section of the constitution was there discussed and applied—Art. X, sec. 3: "No tax shall be levied except in pursuance of a law which shall distinctly state the object of same; to which object the tax shall be applied." That provision was properly not invoked here. And there will be no "diversion" of No. 10's high school building under the Act. It will continue to serve the public purpose for which it was constructed and which it has served in the past, namely, to house the high school pupils of No. 10 and the high school pupils of the now consolidated, outlying districts who have already been in attendance there. Hereafter the latter will pay their way, which they have not done before.

The judgment is reversed and the action dismissed.

FISHBURNE, TAYLOR and OXNER, JJ., and E. H. HENDERSON, Acting Associate Justice, concur.