21031

COOPER RIVER PARK AND PLAYGROUND COMMISSION and Samuel E. Ramsey, Marilyn L. Infinger, Charlie C. Lybrand, Jr., Roscoe Mitchell, Robert B. Stall, Sr., and I. B. Hughes, Appellants, v. The CITY OF NORTH CHARLESTON, Respondent.

(259 S. E. (2d) 107)

*Guerard & Applegate,* Charleston, *for Appellants.*

*James E. Gonzales,* North Charleston, *for Respondent.*

August 16, 1979.

RHODES, Justice:

At issue in this declaratory judgment action is the constitutional validity of Act No. 418, 1973 S. C. Acts 730, as amended. Appellants specifically challenge the provisions of this Act which purport to: (1) diminish the territorial jurisdiction of the Cooper River Park and Playground Commission [Commission]; and (2) transfer to the City of North Charleston [City] those assets of the Commission located within the City's municipal boundaries. The lower court found that the Act was constitutional and, as an additional sustaining ground, that the results of the statute could be accomplished under the common law. We disagree and reverse.

The Commission is a special purpose district lying solely within the County of Charleston. It was created by the General Assembly in 1942 to provide recreational services to the northern area of Charleston County. By charter of 1972, the City was created out of a portion of the territory which was under the original territorial jurisdiction of the Com-

mission. The municipal incorporation had the effect of embracing certain Commission owned properties within the City limits. The question of title to these properties and facilities is at the heart of this controversy.

To resolve the equities of the two entities in the overlapping territory, the Legislature enacted Act 418 in 1973 which, *inter alia,* provided:

*Section 1.   Cooper River Park and Playground Commission.—* . . . The jurisdiction of the commission shall not include any area within the boundaries of the City of North Charleston.

*Section 5.   Transfers and agreements with City of North Charleston.—*(a) All property, easements, rights-of-way, leaseholds, interest and improvements thereto and all public improvements owned by the commission located within the City of North Charleston upon the effective date of this act are hereby transferred and conveyed to the City of North Charleston and shall immediately become the property of the city. The commission shall execute such instruments as may be necessary to effectuate the transfer.

(d) In the event the City of North Charleston annexes any area of the commission after the effective date of this act, such area shall be excluded from the area of jurisdiction of the commission.

(e) Should the city annex all territory within the commission and its city council, by resolution, assumes the functions and obligations of the commission, including those created after the effective date of this act, on the effective date of such resolution the city shall acquire all powers, properties, contract rights and functions of the commission and shall assume all liabilities of the commission, at which time the commission shall cease to exist.

This latter provision, Section 5, was subsequently amended by Act No. 1375, § 1(B), 1974 S. C. Acts 3222, which rec-

ognized the equitable interest of the Commission in the properties conveyed and provided that the Commission be paid a proportionate share of the value of said properties. The above stated provisions are the only portions of these Acts which have been directed to our attention and our holding as to their constitutionality is accordingly so limited.

I

Act No. 418 was enacted subsequent to the ratification of Article VIII by which the General Assembly was prohibited from enacting laws for a specific county or municipality. S. C. Const. Art. VIII, §§ 7, 10. The prohibition of § 7 of Art. VIII against the enactment of laws for a specific county ". . . means that no law may be passed relating to a specific county which relates to those powers, duties, functions and responsibilities, which under the mandated systems of government, are set aside for counties." *Kleckley v. Pulliam,* 265 S. C. 177, 217 S. E. (2d) 217, 220 (1975). Section 7 is not only applicable to special legislation creating a district, but also to special legislation dealing with districts created prior to the ratification of new Article VIII or the amendment of prior special legislation. *Torgerson v. Craver,* 267 S. C. 558, 230 S. E. (2d) 228 (1976). Thus, these provisions of Article VIII have divested the General Assembly of authority to deal by special act with special purpose districts performing functions now delegated to counties under "Home Rule".

Under the mandate of Article VIII, the power to regulate recreational districts within a county has become a proper function of local government. *Knight v. Salisbury,* 262 S. C. 565, 206 S. E. (2d) 875 (1974). It necessarily follows that Act 418, by which the General Assembly endeavored to alter the jurisdiction of and transfer assets of a recreational district solely within Charleston County, constitutes the type of "special legislation" which is proscribed by the provisions of § 7 and § 10.

Under these circumstances, the lower court concluded the Act was constitutional as transitional legislation under our holding in *Duncan v. York County,* 267 S. C. 327, 228 S. E. (2d) 92 (1976). The *Duncan* case sanctioned an act by the General Assembly which created election districts and provided a referendum for a new form of government in York County. We recognized in *Duncan* that special legislation could be constitutionally sustained under § 1 of Article VIII, if the Act is necessary to insure an "orderly transition" of power from the old system of government to the new system of local home rule government mandated by Article VIII. The rationale of *Duncan* was recently refined in *Van Fore v. Cooke,* 255 S. E. (2d) 339, S. C. 1979:

. . . [T]he general law permits the general assembly to act to a very limited extent by special law in the establishment of each initial county government. . . . It does not, however, allow the general assembly to repeatedly inject its will into the operation of county government. (citations omitted).

We conclude, however, that the challenged provisions of Act 418 are clearly not the "transitional" legislation anticipated by *Duncan* and that the lower court erred in sustaining the Act's constitutionality on this basis. Unlike the authorized legislation in *Duncan,* Act 418 in no way relates to the operative machinery necessitated to implement a new form of government under Article VIII. Instead, the Act is an attempt by the General Assembly to immerse itself directly in the regulation of a recreation district within Charleston County which is now a function reserved for local county government under Article VIII.[1]

It is argued that the challenged act must be sustained since at the time of its passage there was in existence no

---

[1] In recognition of such delegation of power, the General Assembly has already enacted a general law authorizing the governing bodies of all counties to alter the boundaries of certain special purpose districts but not including those of recreation. *See* Act No. 926, 1974 S. C. Acts 2018.

general law which would allow the county governing bodies to effectuate these changes. A similar argument was raised in *Knight v. Salisbury, supra,* and decided adversely to the contention of the City.

We accordingly hold that the contested provisions of Act 418 of 1973 are unconstitutional and Act 1375 of 1974 to the extent that it amends Act 418 is likewise rendered invalid.

## II

The lower court further held that even if Act 418 was unconstitutional that the transfer of the Commission's assets to the City could be validated upon the theory that incorporation *ipso facto* vested the City with title to all property within its boundaries under the "so called" general merger rule.

In the case before us, it is agreed that the City has the right to provide recreational services to its citizens and inasmuch as this right is exercised by the City, the function of the Commission within the City's limits is preempted and suspended. The portion of the order of the lower court so providing has not been appealed. Thus, we are not concerned with an operational conflict by the two entities within the limits of the City of North Charleston. We are concerned only with the question of title to the Commission's interest in real property located within the City's boundaries. There is no dispute between the parties as to ownership of personal property.

Addressing ourselves to the basic question of title to the disputed property, we are not in agreement with the holding of the lower court that the general merger rule applies to the case at bar.

In *City of Columbia v. Sanders,* 231 S. C. 61, 97 S. E. (2d) 210, 212 (1957) the general merger rule followed by the lower court was recognized:

" '[I]t is generally held that, where one municipal corporation is annexed to another, the annexing city takes over

the functions of the annexed municipality, and the latter by virtue of the annexation is extinguished, and its property, powers, and duties are vested in the corporation of which it has become a part." *In Re Sanitary Board of East Fruitvale Sanitary District* 158 Cal. 453, 111 P. 368, 370."

It is to be noted that the respondent has cited no case promulgating the above principle except those cases involving factual situations wherein the *entire* public service district or municipal corporation is being annexed.

Here, the City does not encompass the entire territory of the recreational district but only a portion of it, leaving the district to operate in the remaining territory outside the City. In such a situation, it has been held in other jurisdictions that annexation by a city of a portion of the territory serviced by a public service district does not *per se* deprive such district of its assets in the annexed territory. *City of Sacramento v. Southgate Recreation and Park District,* 230 Cal. App. (2d) 916, 41 Cal. Rep. 452 (D. C. 1964). But where only " ' . . . part of the territory of one municipal corporation is taken from it and annexed to another, the former corporation retains all its property, including that which happens to fall within the limits of such other corporation, unless some other provision is made by the act authorizing the separation.' " *State v. City of Lenoir* 249 N. C. 96, 105 S. E. (2d) 411, 415 (1958), *citing City of Winona v. School District No. 82,* 40 Minn. 13, 41 N. W. 539, 3 L. R. A. 46, 12 Am. St. Rep. 687 (1889).

For the foregoing reasons, Act No. 418 of 1973 and Act No. 1375 of 1974 to the extent that they diminish the jurisdiction of the Cooper River Park and Playground Commission and transfer to the City of North Charleston those assets of the Commission located within the municipal boundaries are declared unconstitutional.

Reversed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.