The CITY OF CONWAY, Plaintiff,

v.

GRAND STRAND WATER AND SEWER AUTHORITY and the United States of America, Defendants.

Civ. A. No. 81–2244–15.

United States District Court,
D. South Carolina,
Florence Division.

Feb. 24, 1982.

Joseph F. Singleton, O. Terry Beverly, Conway, S. C., for plaintiff.

Richard N. Booth, Conway, S. C., Leo H. Hill, Greenville, S. C., Huger Sinkler, Charleston, S. C., Joseph A. Wilson, II, Asst. U. S. Atty., Columbia, S. C., for defendants.

## ORDER

HAMILTON, District Judge.

This action was commenced by the City of Conway (Conway) in the Court of Common Pleas of Horry County, South Carolina, against the Grand Strand Water and Sewer Authority (Grand Strand). The dispute arose over alleged incursions by Grand Strand's water and sewer lines into a region claimed to be part of the service area of Conway (the Area).

## INTRODUCTION

In its Amended Complaint, Conway alleged that Grand Strand extended its water lines into the Area, thereby infringing on Conway's right to provide service therein. Conway also alleged that this extension of water lines was in violation of the rights of the Horry Water and Sewer Authority (Horry) which was authorized to provide water service in the area, and with whom Conway had contracted to provide service therein.

The amended complaint requested that (1) Grand Strand be enjoined from extending its water or sewer lines into the Area, (2) that Grand Strand be enjoined from connecting any customer in the area to Grand Strand's water or sewer system, and (3) that the Area be declared to constitute the legitimate and legal water and sewer area of Conway.

In its answer, Grand Strand denied that either Conway or Horry had the right to provide service in the Area. Grand Strand further alleged that it was authorized by law to provide water and sewer service therein. Grand Strand counterclaimed, seeking to have Conway enjoined from operating in the Area.

A Petition for Intervention was filed by the United States requesting that it be allowed to intervene in this action because (a) the Grand Strand system was built with federal funds and the United States of America holds bonds against the Grand Strand system in an amount exceeding Eight Million Dollars ($8,000,000) secured by a pledge of all water and sewer revenue from Grand Strand, and (b) since Grand Strand is a borrower of the United States (Farmers Home Administration) any fragmentation or encroachment upon Grand Strand's system is prohibited by Title 7 United States Code Section 1926(b).

By an Order of the Horry County Court of Common Pleas dated September 28, 1981, the United States was allowed to intervene and the matter was removed to this court on October 9, 1981.

The facts in this case are for the most part undisputed, and the issues are principally ones of statutory and constitutional construction. After reviewing the record as stipulated to by the parties at the hearing of this adversary proceeding held on January 28, 1982, examining the exhibits, the pleadings, and the briefs submitted by counsel, this Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Civil Procedure 52(a).

## FINDINGS OF FACT

1. In 1964, or thereabout, ostensibly pursuant to authorization contained in special law, Act No. 977 of the Acts and Joint Resolutions of The General Assembly of South Carolina, 1964, Conway acquired from Horry County certain water facilities which Horry County had constructed along U. S. Highway 501. No authority was given in Act No. 977 for expansion of the facilities nor was any specific service area defined or created.

2. Conway subsequently extended water service in a small area east of Conway and north and south of U. S. Highway 501 (which runs east and west between Conway and Myrtle Beach).

3. In 1971, Grand Strand was created as a water and sewer authority and a body politic and corporate by Act 337 of the Acts and Joint Resolutions of The General Assembly of South Carolina, 1971. This Act gave Grand Strand the power to provide water and sewer service in those areas of Horry County between the Intracoastal Waterway and the Atlantic Ocean. Section 2 of the Act limited the sale of water and sewer service for domestic use within three miles of existing municipalities without the consent of the municipality. However, the territory as defined in Act 337 did not include the area now in dispute.

4. In 1973 new Article VIII of the South Carolina Constitution became effective and in 1974 pursuant to the propositions of new Article VIII, The General Assembly enacted a general law, Section 6–11–420, S. C. Code of Laws, 1976, (originally Act 926 of 1974) to allow county governments to deal with the enlargement or diminution in size of existing special purpose districts.

5. On May 20, 1975, The Board of Commissioners of Horry County, then the governing body of the County, adopted a resolution entitled: "A Resolution Redefining The Boundaries Of The Grand Strand Water And Sewer Authority, Horry County, South Carolina"; providing for public notice of such action; and other matters relating thereto. This resolution, adopted pursuant to Act 926 of 1974 (now codified as Section 6–11–420, South Carolina Code of Laws, 1976) extended Grand Strand's service area west to the Waccamaw River, thus including the area presently in dispute.

6. Horry, whose service area would be necessarily reduced by the extension of Grand Strand, joined in the request for enlargement. Conway raised no challenge to Horry County's action within the limitation period prescribed by Code Section 6–11–480.

7. Pending and in anticipation of the resolution of the County Board of Commissioners, Conway and Grand Strand entered into a "Water Purchase Contract" dated April 23, 1975. Under this contract Conway agreed to supply water at wholesale prices to Grand Strand to enable it to provide service to its new service area as designated by Horry County pursuant to the Resolution adopted May 20, 1975.

8. In reliance upon the unchallenged action of the County governing body in expanding its boundaries, Grand Strand constructed extensive facilities (both water and sewer) within its enlarged service area.

9. Grand Strand obtained financing for such facilities through the Farmer's Home Administration, (FmHA) as a result of which the FmHA holds a lien on certain property of Grand Strand. In this regard, the parties stipulated that revenues from facilities in the Area make a substantial contribution to the total revenues of the Grand Strand System.

10. The parties also stipulated that the City of Conway's water and sewer system is also subject to revenue bonds held by the Farmers Home Administration including portions of said system outside and inside the Area.

11. Grand Strand expressed its consent to the continued operation of existing facilities owned by Conway in the Area.

## CONCLUSIONS OF LAW

The clear intent of new Article VIII of the South Carolina Constitution, effective March 7, 1973, is that home rule be given to the counties and that county government should function in the county seats rather than at the State Capitol. *Knight v. Salisbury*, 262 S.C. 565, 206 S.E.2d 875 (1974). Accordingly, after March 7, 1973, the General Assembly could no longer deal with existing single county special purpose districts by way of special act. *Cooper River, etc. v. City of North Charleston*, 273 S.C. 639, 259 S.E.2d 107 (1979). However, there were many instances in which it was desirable to change the boundaries of existing special purpose districts. A general law, Section 6–11–420, S.C. Code of Laws, 1976, (originally Act 926 of 1974), was enacted in response to this problem. The legislative findings to that statute set forth on p. 364 of Vol. 2 of the South Carolina Code provide in pertinent part:

By reason of the adoption of new Article VIII to the Constitution of this State

as of March 7, 1973, questions exist as to the power of the General Assembly to enact laws for specific counties which would enlarge the area of any existing special purpose district or which would allow two or more special purpose districts to consolidate. In view of the growth in and about many special purpose districts, it may become desirable to enlarge or consolidate such districts. In other areas where functions granted to special purpose districts have not been exercised or have only been partially exercised and a lack of need exists in portions of existing special purpose districts, it may become desirable to diminish the size of existing special purpose districts. In order to provide a means by which existing special purpose districts may be enlarged, diminished or consolidated, the General Assembly has determined to grant the governing bodies of the several counties of the State the power to enlarge or diminish the areas and consolidate the areas and functions of any special purpose districts within such county.

As the above language makes clear, the legislature chose to address this problem by giving the governing bodies of the counties the power to change special service district boundaries. Code Section 6–11–420 provides that "The county boards of the several counties of the State are authorized to enlarge, diminish or consolidate any existing special purpose districts located within such county . . . ." Subsequent Code Sections 6–11–430 through 6–11–480 prescribe notice and hearing procedures that are to be followed by the county boards in altering district boundaries.

Following this procedure, the County Board of Commissioners of Horry County (which was the governing body of Horry County at that time) extended the service area of Grand Strand by resolution dated May 20, 1975. That resolution provided as follows:

The Authority's boundaries are hereby enlarged and redefined so as to include all the area in Horry County, South Carolina, between the Waccamaw River and the Atlantic Ocean, excluding any area within an incorporated municipality which owns and operates a municipal water and/or sewer system; provided, however, that all powers, functions and duties heretofore granted to the Authority by Act 337 shall not be revoked, repealed or rescinded by this Resolution.

This new service area includes that region now in dispute, a portion of which is within three miles of the City of Conway lying east of the Waccamaw River and which was formerly within the boundaries of Horry.[1] Defendant's Exhibit 6 contains proceedings by which Horry County Water and Sewer Authority joined in the recommendation that the boundaries of both Horry and Grand Strand be changed as requested. Consequently the action was taken at the request, and with the full approval, of Horry.

Section 6-11-480 provides that such action changing the boundaries of special service districts may not be challenged after the passage of twenty days after public notice of such action by a county governing body. Since this time limit has run, the action of the Horry County Board of Commissioners may not now be challenged. Local government has been restored to the county level by virtue of new Article VIII, Horry County has fully complied with Section 6-11-420, therefore the area in question is clearly within the service area of Grand Strand.

Conway claims the right to serve the disputed area based on Act 977 of 1964. Conway also claims that it has an agreement with Horry to serve the disputed area. Conway claims further that Horry retains jurisdiction over the area notwithstanding the action of the County Board of Commissioners in 1975.

Horry could have no claim to provide service in the Area in view of its 1975 request that the Horry County Board of Commissioners expand the service area of

1. Obviously, under the terms of the Resolution the three mile limit referred to in Section 2 of Act 337 was superceded by the Resolution as passed on May 20, 1975.

Grand Strand to include the area now in dispute. Accordingly, any claim of right made by Conway through Horry, by agreement or otherwise, must fail.

Plaintiffs contend that Act 977 of 1964 gave Conway power to purchase certain county water lines and power to operate a water system outside the Conway's corporate boundaries. I conclude that this Act merely authorized Conway to purchase and operate certain existing water lines theretofore owned and operated by Horry County. Nothing in the Act purports to authorize Conway to operate generally within the county, and nothing therein grants or creates any exclusive "service area" for Conway as it contends in this action.

Even assuming that this Act might have authorized Conway's right to provide service in this area, it has been impliedly repealed.[2] In 1972, by Act No. 1856, the General Assembly gave Horry the right to serve this area, thus impliedly withdrawing the power of Conway to operate therein.[3] Act 977 must also be viewed as having been repealed by a provision of the Home Rule Act of 1975, now codified as Section 5–7–60, which provides that, "Any municipality may perform any of its functions, furnish any of its services, *except within a designated service area for all such services of another municipality or political subdivisions, including water and sewer authorities.*" (emphasis added).

Conway also asserts that Section 6–11–410, *et seq.* constitute an impermissible and unconstitutional taking of Conway's property. This contention is without merit under both the United States and South Carolina

Constitutions, *South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231 (9th Cir. 1980), Cert. denied 449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502. *Nesbitt v. Gettys*, 219 S.C. 221, 64 S.E.2d 651 (1951).

Defendant United States of America argues that the action of Conway in claiming a "service area" within Grand Strand's expanded boundaries is in violation of 7 U.S.C. Section 1926(b). This section of the United States Code is a portion of the Consolidated Farmers Home Administration Act of 1961. This Act, as amended, provides for loans to be made, or insured, by the Farmer's Home Administration to provide for various services in rural areas, such as the loan to Grand Strand in this case. Section 1926(b) provides that the services "shall not be curtailed or limited . . . by the granting of any private franchise for similar services within such area during the term of such loan . . . ."

The Legislative history of Title 7 U.S.C. Section 1926(b) is found in U.S.Code Congressional and Administrative News, 87th Cong. 1961, Vol. 2, pp. 2243, 2309, which states:

By interpretation loans to associations cannot now be made unless a major part of the use of the facility is to be by farmers. This section would broaden the utility of this authority somewhat by authorizing loans to associations serving farmers, ranchers, farm tenants, and other rural residents. This provision authorizes the very effective program of financing the installation and development of domestic water supplies and pipelines

---

**2.** Although it is not necessary to reach this issue, I note that Act 977 would likely be found unconstitutional by the South Carolina courts. Section 1 of Article VIII of the South Carolina Constitution, as then written provided:

The General Assembly shall provide by general laws for the organization and classification of municipal corporations. The powers of each class shall be defined so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class.

Under this provision the legislature could not give additional powers to one municipality by special law. *Floyd v. Calvert*, 114 S.C. 116, 103

S.E. 82 (1920). Act 977 was precisely the sort of enactment forbidden by this provision.

Act 977 of 1964 also appears violative of Article III, Section 34 of the South Carolina Constitution as a special law enacted where a general law could be made applicable. Here a general law (Act 164 of 1945, as amended, codified in part as Sections 5–31–1510 and 5–31–1520) had been made applicable but provides no basis for the position of Conway.

**3.** Conway in essence admits the effect of this grant to Horry in paragraph 10 of its Amended Complaint, in which it states that this area belongs to Horry; it cannot at the same time assert its own rights therein.

serving farmers and others in rural communities. By including service to other rural residents, the cost per user is reduced and the loans are more secure in addition to the community benefits of a safe and adequate supply of running household water. *A new provision has been added to assist in protecting the territory served by such an association facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system.* (Emphasis added.)

And at page 2305, under the "Short Explanation" of Title III of the Agricultural Act of 1961, it is stated that

This title—

9. Prohibits curtailment of a water association borrower's service as a result of inclusion of its service area within the boundaries of any public body or as a result of the granting of any private franchise for similar service in such area.

Thus, the purpose of Section 1926(b) is clear, viz., "protecting the territory served by such an association facility against competitive facilities which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system." The action of Conway in this case is precisely the sort of action prohibited by this Section—the expansion of municipal facilities into an area served by a district receiving Farmers Home Administration financing. *Rural Water District # 3 v. Owasso Utilities Authority, et al*, 530 F.Supp. 818 (N.D. Okl.1979).

As noted however, Conway's actions are not authorized under South Carolina law. Accordingly, it is not necessary to reach the question of whether they would be in violation of 7 U.S.C. Section 1926(b).

IT IS, THEREFORE, ORDERED that judgment be entered against Plaintiff, the City of Conway, and in favor of the Defendant Grand Strand Water and Sewer Authority and Defendant United States of America, enjoining the Plaintiff, its agents, servants, and employees, or anyone acting under their direction, from any expansion of its services within the geographical confines of the territory of Defendant Grand Strand, as expanded in 1975 by resolution of the Horry County governing body and such boundaries as expanded, are hereby specifically confirmed and similarly the exclusive authority and responsibility of Grand Strand Water and Sewer Authority to provide water and sewer service within this area is confirmed; *provided, however,* that the City of Conway may continue to operate existing facilities owned by the City in the Area in view of the consent of Grand Strand but the City of Conway shall not expand such facilities.