## 19799

CITY OF ORANGEBURG, Appellant, v. J. Lewis MOSS et al., Respondents

(204 S. E. (2d) 377)

*Messrs. C. Walker Limehouse,* of Orangeburg, and *James M. Brailsford, III,* of *Robinson, McFadden, Moore and Pope,* Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* of Columbia, *for Respondent, The Public Service Commission, Roberts, Jennings and Thomas,* of Columbia, and *Kearse, Kemp and Rhoad,* of Bamberg, *for Respondent, Edisto Electric Co-operative, Inc.,*

*Messrs. C. Walker Limehouse* of Orangeburg, and *James M. Brailsford, III,* of *Robinson, McFadden, Moore and Pope,* Columbia, *for Appellant,* in Reply.

April 2, 1974.

*Per Curiam:*

The sole question involved in this cause is the constitutionality of the statutory jurisdiction asserted by the Public Service Commission of South Carolina over a municipality providing electrical service to customers outside the corporate limits of such municipality. The order under appeal correctly disposed of this issue, and with certain deletions, will be reported as the judgment of this Court.

## ORDER OF JUDGE SPRUILL

This action brought by the City of Orangeburg against the members of the Public Service Commission and the Edisto Electric Cooperative, Inc., is in the nature of an appeal from an order of the Public Service Commission overruling the position of the City that its operations as a distributor of electricity were not subject to the jurisdiction of the Public Service Commission. This case was heard by the undersigned at Columbia on November 21, 1972 * * *. The sole question before the Court is as to the jurisdiction of the Public Service Commission over a municipality providing electrical service to customers outside its limits.

The City of Orangeburg and a local developer entered into a contract whereby the City was to provide electrical service to a new subdivision being constructed on U. S. Highway No. 178 some distance to the Southeast of the City of Orangeburg. On the complaint of the Edisto Electric Cooperative, the Public Service Commission issued an *ex parte* cease and desist order on February 3, 1972, and ordered the City to show cause before it on February 16, 1972, why the cease and desist order should not be made permanent. The City of Orangeburg appeared specially on that date for the sole purpose of objecting to the jurisdiction

of the Commission. After hearing arguments and receiving written briefs, the Commission issued its order, dated March 21, 1972, overruling the jurisdictional objection of the City of Orangeburg and setting another date upon which the City was required to show cause why the cease and desist order should not be made permanent. The City petitioned the Commission for a rehearing, which was not granted, and thereafter the complaint now before the Court was served and is in the nature of an appeal to the Court of Common Pleas from the holding of the Commission that it has jurisdiction. The hearing on the merits has not been held to date and is deferred pending the determination as to whether the Commission has jurisdiction to hear and decide the complaint made by the Edisto Electric Cooperative.

When the question of the power of a city to operate an electrical facility was first presented to the South Carolina Supreme Court in 1890, it took a very restricted view of municipal powers. In the case of *Mauldin v. City Council of Greenville*, 33 S. C. 1, 11 S. E. 434, the Court, relying on Judge Dillon's work on Municipal Corporations and the opinion of Chief Justice Waite in *Ottawa v. Carey*, 108 U. S. 110, 2 S. Ct. 361, 27 L. Ed. 669, held that it was *ultra vires* the power of the City of Greenville to operate an electrical facility to supply light to private persons. The Court, speaking by Justice McGowan, said: "We cannot doubt that the purchase of the system producing incandescent lights, so far as it was to furnish lights to private persons, with or without compensation, was not a corporate act of the city council, and binding upon the corporators, but was beyond their authority, as the governing body of the corporation."

The case of *Mauldin v. City Council of Greenville* was, in effect, reversed by the convention which drafted the South Carolina Constitution of 1895. Article 8, Section 5, provides as follows:

"Waterworks systems; plants furnishing lights and ice.— Cities and towns may acquire, by construction or purchase,

and may operate, waterworks systems and plants for furnishing lights and ice manufacturing plants and may furnish water and lights and ice, to individuals, firms and private corporations for a reasonable compensation: *Provided,* That no such construction or purchase shall be made except upon a majority vote of the electors in said cities or towns who are qualified to vote on the bonded indebtedness of said cities or towns."

It is the position of the plaintiff in the current action ▌ that this constitutional grant of power to the municipalities of the State to operate electrical facilities is a limitation on the power of the State of South Carolina to regulate those activities through the Public Service Commission or otherwise. The writer does not agree. He feels that the section in question was no more than a constitutional provision to permit certain municipal activities previously held *ultra vires* and that it is not to be construed as limiting the power of the State to regulate such activities.

For many years the statutory law providing for the regulation of electrical utilities has contained the following:

"The term 'electrical utilities' includes municipalities to the extent of their business, property, rates, transactions and operations without the corporate limits of the municipalities. . . ."

See Sec. 24-1, Code of Laws of 1962.

This part of the definition of electrical utility was carried forward by Sec. 6 of Act No. 432 of the Acts and Joint Resolutions of 1969.

The law providing for the extension of municipal systems is as follows:

"Sec. 24-62. Extensions by municipalities.—Any municipality operating its own plant or transmission system, if granted by the Commission a certificate of convenience and necessity as provided by § 24-63, may extend its lines and electrical service into any territory adjacent to such munic-

ipality, as well as into any nearby city or town, if there is no electrical utility then operating in such city or town."

The following section provides that a certificate of convenience and necessity shall be required of any electrical utility, except a municipality within its corporate limits, which hereafter begins the construction or operation of any electrical utility plant or system, or any extension thereof except under certain circumstances.

When the City of Orangeburg proposed to make the extension involved in this case to the new subdivision outside the City limits of Orangeburg, it did not apply for a certificate pursuant to Sec. 24-63. Thereupon, the Edisto Electric Cooperative sought a cease and desist order under Sec. 24-67 as amended by Act No. 432 of the Acts and Joint Resolutions of 1969. It is only by reason of the amendment of 1969 that the electric cooperative is an interested party having status to make complaint to the Public Service Commission. Prior to the Act of 1969, it had no standing to be heard. *Black River Electric Cooperative v. Public Service Commission,* 238 S. C. 282, 120 S. E. (2d) 6.

The statutes enacted by our General Assembly as they affect municipally operated electrical utilities are not consistent. They grant authority to the Public Service Commission to control the extension of service areas and to limit competition with privately owned utilities and electric cooperatives. However, the Legislature, by Sec. 24-51, has explicitly denied to the Commission any authority to regulate any contracts made with its customers without regard as to whether such customers are within or without the municipality. The writer, however, would construe this to be limited to contracts as to rates and conditions of service and not to be so broad as to exempt from regulation a contract to provide service in an area in which a municipality was not permitted by Sec. 24-63 to operate without obtaining a certificate.

The City of Orangeburg relies heavily on the fact that it was involved in similar litigation which reached the Supreme Court in 1961 in the case of *Tri-County Electric Cooperative v. Snow,* 238 S. C. 298, 120 S. E. (2d) 14. In this particular litigation Tri-County Electric Cooperative sought to follow the exact procedure involved in the instant litigation. In the hearing before the Commission, the City of Orangeburg stood on two grounds. First was the ground that Article 8 Sec. 5 precluded the Public Service Commission from exercising jurisdiction and, second, that the cooperative had no standing under Sec. 24-67 as then written. The Commission upheld the City of Orangeburg on both grounds and the cooperative appealed. The Circuit Court thereafter sustained on both grounds and the cooperative appealed to the Supreme Court. There the decision was handed down on the same day as the *Black River Electric Cooperative* case. In a *Per Curiam* opinion the Supreme Court affirmed on the ground that the cooperative lacked standing to complain. It stated explicitly that it found it unnecessary to determine whether the Commission is empowered to restrict or regulate the electrical utility operations of municipalities outside of their corporate limits. By reason of the refusal of the Supreme Court to consider the question, the writer believes that the holding of the Commission and the order of the Circuit Court in the *Tri-County* case are persuasive but that they are in no way binding as to the present litigation.

The City of Orangeburg relies heavily on *Sossamon v. Greater Gaffney Metropolitan Utilities Area,* 236 S. C. 173, 113 S. E. (2d) 534. This case involved a water facility but it is unquestionably true that Article 8 Sec. 5 would be equally applicable to a water and to an electrical facility. The case concerned a special act of the General Assembly which, in effect, forced the City of Gaffney to permit the use of its water facilities to supply water throughout Cherokee County with the City to receive nothing more than repayment of costs and with any revenues above such sum

to be paid over to the County Treasurer. One attack made on the special act was that it was in violation of Article 8 Sec. 5. However, the Court, in overruling the Circuit Court and finding the act invalid, based its decision on several grounds. One of these was that it was special legislation in contravention of Article 8 Section 1. Thereafter, the Court, speaking by Justice Oxner, considered the constitutional question raised by the appellant on the basis of Article 8 Section 5. The language of the opinion is as follows:

"We also think the Act is obnoxious to Article 8, Section 5 of the Constitution which grants to all municipalities within the State the right to acquire and operate a waterworks system. As previously pointed out, this right cannot be denied by the Legislature, neither do we think it may be restricted in the manner proposed by this legislation. *City of Tucson v. Polar Water Co.,* 76 Ariz. 126, 259 P. (2d) 561. When under this constitutional grant a municipality establishes a waterworks system for the benefit of its inhabitants, the Legislature may not without its consent and without compensation appropriate in whole or in part such water system to the use of the inhabitants of another governmental unit. The Court in *In re Malone's Estate,* 21 S. C. 435, quoted with approval the following from Cooley's work on Constitutional Limitations: 'When corporate powers are conferred, there is an implied compact between the state and the corporations that the property which they are given the capacity to acquire for corporate purposes, under their charter, shall not be taken from them and appropriated to other uses.' There was further quoted the following from the celebrated *Dartmouth College* case, Trustees of *Dartmouth College v. Woodward,* 17 U. S. 518, 4 Wheat. 518, 4 L. Ed. 629 'It may also be admitted that corporations for mere public government, such as towns, cities, and counties, may, in many respects, be subject to legislative control. But it will hardly be contended that, even in respect to such corporations, the legislative power is so transcended that

it may, at its will, take away the private property of the corporation or change the uses of its private funds acquired under the public faith.' "

The writer construes this language not to be so broad as to preclude the State from regulating the territory or rates of the municipality for water supplied without the city. He thinks that the language used tailors the opinion to the facts before the Court and does not indicate that the General Assembly cannot provide for the regulation of municipal electrical service outside of the corporate limits of the municipality. To hold otherwise would mean that the City of Orangeburg, or some other municipality, having an electrical business, could build generating plants and transmission lines and set out to duplicate the facilities of the private power companies and of electric cooperatives now serving throughout the State of South Carolina. In the writer's opinion, Article 8 Sec. 5 was intended only to permit municipalities to enter a field from which they had been effectively precluded by the decision in Mauldin and it was not intended to give them a preferred status over all other parties furnishing electricity throughout the State of South Carolina.

The writer * * * finds that the South Carolina Public Service Commission has jurisdiction to consider the complaint pending before it in the instant case and that it is proper for this cause to proceed to a hearing on its merits. For the foregoing reasons.

It is ordered that the complaint be dismissed.