22007

Frank B. BERRY, Carl Campbell, Jr., Jack E. Roumillat, Pat Bailey, Roy H. Lightsey, in their official capacities, constituting the Dorchester County Water Authority, and in their individual capacities, and Robert Mahoney, Appellants, v. T. Coke WEEKS, George P. Knight, Donald Handelsman, Kenneth F. Waggoner, Edmond T. Khight, Walter B. Wall, Jr., Shirley M. Lang, constituting the Dorchester County Council, Respondents.

(309 S. E. (2d) 744)

*Sinkler, Gibbs & Simons,* Charleston, and *Mary Ann Marwick,* Summerville, *for appellants.*

*Leo H. Hill,* of *Hill, Wyatt & Bannister,* Greenville, *amicus curiae, for Ass'n of Sp. Purpose Districts.*

*James A. Bell,* St. George, and *Guerard & Applegate,* Charleston, *for respondents.*

November 28, 1983.

HARWELL, Justice:

Appellant Dorchester County Water Authority (the Authority) appeals from the trial court's refusal to issue an injunction or declaratory judgment against respondent Dorchester County Council. We reverse.

This dispute involves the proposed takeover by Dorchester County of a special purpose district located within its boundaries after the home rule amendments to the South Carolina Constitution, Article VIII.

The legislature created the Authority in 1965 and gave it the power to distribute and sell water in the unincorporated areas of Dorchester County. On May 19, 1977, after the home rule amendments had become effective, the voters of Dorchester County approved a referendum allowing the County to operate a water system.

By 1978 the Authority was servicing the Reevesville Community and an industry near St. George, both located in the northern part of the county. In 1980 the Public Service Commission approved the proposed transfer of eight privately owned water systems in the southern part of the county to the Authority. In June 1981 the Authority acquired financing for purchase of the systems. It began to operate the systems with permission of the private owners.

Then, on August 17, 1981, the County Council adopted a resolution decreasing the size of the Authority to the service areas near Reevesville and St. George. The Council subsequently passed an ordinance announcing its plan to fully assume the function of the Authority.

The county relies on Article VIII, § 16, of the South Carolina Constitution to support its proposed takeover of the Authority's functions. That Section states in pertinent part:

> Any county ... created under this Constitution may, upon a majority vote of the electors voting on the question in such county ..., acquire by initial construction or purchase and may operate water, sewer ... or other public utility systems ...

The county asserts that, since § 16 is self-executing, *Murphree v. Mottel,* 267 S. C. 80, 226, S. E. 36 (1976), and the county's voters approved the referendum, it can assume the Authority's functions. We disagree.

*Murphree v. Mottel, supra,* involved a special purpose district created by the legislature after ratification of the home rule amendments. The trial court's conclusion that this special legislation violated Article VIII, § 7, was not appealed. This Court held that, while § 16 is self-executing, the referendum was invalid because it was instigated by an inappropriate governing body.

In the present case, the county was the proper governmental entity to call a referendum under Article VIII, § 16. However, new § 16 did not affect the existence of the Authority, which was established eight years prior to adoption of the home rule system.

This reading of § 16 is supported by the history of earlier Constitutional provisions, by §§ 1 and 7 of new Article VIII as interpreted by this Court, and by legislation protecting special purpose districts enacted since § 16.

First, we shall examine the history of our constitutional provisions relating to waterworks. In *Mauldin v. Greenville,* 33 S. C. 1, 11 S. E. 434 (1980), the Court held that operation of certain utilities by cities and towns would be *ultra vires.* After *Mauldin,* the constitution was amended to allow cities and towns to operate water systems. (former Article VIII, § 5). The purpose of that amendment was to correct the *ultra vires* problem rather than to give municipalities a preferred status over other entities furnishing the services. *City of Orangeburg v. Moss,* 262 S. C. 299, 204 S. E. (2d) 377 (1974).

The language of new Article VIII, § 16, parallels that of former § 5. It, however, adds a paragraph empowering counties as well as cities to operate utilities. Section 16 changes the former situation that such action by counties would be *ultra vires. See Doran v. Robertson,* 203 S. C. 434, 27 S. E. (2d) 714 (1943).

This interpretation of § 16 is also consistent with § 1, which states:

The powers possessed by all counties, cities, towns, and *other political subdivisions* at the effective date of this Constitution shall continue until changed in a manner prescribed by law. (emphasis added).

Section 1 thus protects special purpose districts until the legislature makes a change.

Section 7 of Article VIII prohibits special legislation for particular counties. Therefore, the General Assembly cannot create new special purpose districts to operate solely within a county. Counties implicitly have the power to create them. *Knight v. Salisbury,* 262 S. C. 565, 206 S. E. (2d) 875 (1974). Nevertheless, special acts remain valid until repealed or superseded by general law. *Neel v. Shealy,* 261 S. C. 266, 199 S. E. (2d) 542 (1973). Therefore, the Act creating the Authority remains valid.

The legislature has passed several statutes since the home rule amendments which support the continued viability of special purpose districts. South Carolina Code Ann. § 6-11-420 (1976) authorizes counties to enlarge, diminish, or consolidate existing districts but does not allow them to abolish the districts.

Section 44-55-1410 allows counties to operate water systems within special purpose districts, but only with district consent.

Section 4-9-80 states that preexisting special purpose districts shall continue to function until they are dissolved by Act of the General Assembly after a favorable referendum of the district's voters.

Hence, we conclude that the county cannot abolish the Authority. No legislative act or constitutional provision authorizes such a step; nor has the Authority consented to any assumption of its duties by the county.

The county has additionally attempted to reduce the Authority's size, but it has failed to follow the statutory procedure.

As noted above, § 6-11-420 empowers counties to diminish the size of special purpose districts located within the county. Section 6-11-430 indicates that a county should change the

size of a district by a resolution ordering a public hearing. Section 6-11-440 sets forth the required contents of the Notice of Public Hearing. The notice in the case at bar was defective in several respects. Subsection (3) requires a description of the nature of the proposed change. The notice ambiguously stated that the change would permit the county to combine water and sewer service in the eastern end of Summerville. Summerville is an incorporated municipality not within the Authority's service area.

Subsection (7) requires that the notice state the cost of proposed improvements. The notice stated only that the improvements would be funded by the Farmers Home administration.

After the hearing is held, a county must, by resolution, make a finding whether the boundaries of the district will be changed and publish notice of its decision according to § 6-11-470.

Thus, the county in the case at bar failed to follow the statutory procedure for diminishing the operating area of the Authority. Nevertheless, the county conceded at oral argument that its intent was not to diminish the Authority's size but to fully assume the functions of the Authority. This step is not proper under the Constitutional and statutory law of this State.

The interaction of counties with special purpose districts existing prior to home rule is indeed confusing. Yet, until the legislature passes a general law affecting the existence of these districts, counties lack the power to abolish them.

The judgment below is, accordingly,--

Reversed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.