283 S.C. 67 (1984)
321 S.E.2d 258
SPARTANBURG SANITARY SEWER DISTRICT, Respondent,
v.
CITY OF SPARTANBURG: Franklin W. Allen, in his official capacity as Mayor of the City of Spartanburg and a member of The Spartanburg City Council; C. Chester Brown, E. Lewis Miller; Ralph D. Prince, and Richard W. Kline, in their official capacities as members of The Spartanburg City Council; and William H. Carstarphen, in his official capacity as Spartanburg City Manager, Appellants. The CITY OF SPARTANBURG and E. Lewis Miller, individually and as Mayor of the City of Spartanburg and C. Chester Brown, Jr., Richard W. Kline, Ellen Hines Smith and James E. Talley, individually and as members of City Council of Spartanburg, Appellants,
v.
SPARTANBURG SANITARY SEWER DISTRICT, Respondent.
22159
Supreme Court of South Carolina.
Heard February 21, 1984.
Decided August 21, 1984.
*68 *69 *70 T.E. Walsh and William E. Walsh, of Gaines & Walsh, Spartanburg, for appellants.
Edward P. Perrin and Lawrence E. Flynn, Jr., of Perrin, Perrin, Mann & Patterson, Spartanburg, for respondents.
*71 Heard February 21, 1984.
Decided August 21, 1984.
GREGORY, Justice:
These two actions were consolidated for purposes of appeal. We affirm as modified the Order of the circuit court in Spartanburg Sanitary Sewer District v. The City of Spartanburg. We reverse the Order of the circuit court in The City of Spartanburg v. Spartanburg Sanitary Sewer District.

I.
Respondent Spartanburg Sanitary Sewer District (the Sewer District) brought this action seeking a permanent injunction enjoining appellant City of Spartanburg (City) from constructing sanitary sewer construction lines outside its city limits and seeking a declaration of the rights, status, duties, and responsibilities of the parties. The City counterclaimed, seeking, among other things, an accounting, an injunction enjoining the Sewer District from using general funds for special purposes, and a holding that Act 1503 of the 1970 Acts and Joint Resolutions of the General Assembly is unconstitutional. The circuit court granted the Sewer District's motion for summary judgment, holding the City could not extend its collector lines to areas located outside its city limits, and dismissed the City's counterclaim. We affirm, as modified.

MOTION FOR SUMMARY JUDGMENT
The Sewer District moved for summary judgment requesting the court to hold as a matter of law the City was without authority to provide sanitary sewer collection service to areas or persons outside its corporate boundaries unless such services were performed pursuant to contract with the Sewer District and to enjoin the City from doing so. The court granted the motion.
The City argues the court erred in granting the Sewer District's motion for summary judgment. We disagree.
"Summary judgment is not proper unless it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." Crescent *72 Company of Spartanburg, Inc. v. Insurance Company of North America, 266 S.C. 598, 225 S.E. (2d) 656, 659 (1976).
The City contends S.C. Code Ann. § 5-7-60 (1976) gives it the authority to extend its collection lines to areas outside its corporate limits. We disagree.
Section 5-7-60 provides in part;
Any municipality may perform any of its functions, furnish any of its services ... in areas outside the corporate limits of such municipality by contract with any individual, corporation, state or political subdivision or agency thereof... subject always to the general law and Constitution of this State regarding such matters, except within a designated service area for all such services of another municipality or political subdivision, including water and sewer authorities... For the purposes of this section designated service area shall mean an area in which the particular service is being provided or is budgeted or funds have been applied for as certified by the governing body thereof. Provided, however, the limitation as to service areas of other municipalities or political subdivisions shall not apply when permission for such municipal operations is approved by the governing body of the other municipality or political subdivision concerned.
Act 1503 set forth as one of the purposes of the Sewer District "to design, install, construct and reconstruct sewerage collection systems, sewerage transmission systems and sewerage treatment facilities." An affidavit attached to the motion for summary judgment stated the Sewer District has constructed sanitary sewer collection lines, transmission lines and treatment facilities to handle the waste water generated by the users of the sewerage system located within the district. The Sewer District thus would fit the definition of a designated service area, and the City would therefore be prohibited from extending its collection lines to areas outside its corporate limits absent permission from the Sewer District.
The City asserts it can serve the Hillbrook drainage basin, an area outside its corporate limits, more economically than the Sewer District. It further asserts it has a contract to serve *73 a property owner within the drainage basin, and the Sewer District has no contract and has received no petition requesting service from any property owner. The City submits the intent of Act 1503 is to make it easier for users of the entire district to obtain sewerage collection services and to obtain those services in an economical manner.
A reading of Act 1503 evinces an intent to make available throughout the district sanitary sewer services because serious health hazards have been created due to the growth of the district's population and the lack of an overall plan to provide sewer services to all sections of the district. The Sewer District's predecessor was created in 1929 to establish, maintain, and operate a system of sewer, sewer lines, and sewer mains, treatment and disposal plants to treat sewage from the city and other areas in the district which might become subdistricts and construct their own sewerage collection lines. It is only logical, therefore, that the Sewer District be given the authority to construct sewerage collection systems, transmission systems, and treatment facilities to serve those areas within the district which did not have prior access to the system. Nowhere in Act 1503 is there any indication of legislative intent to allow the City to extend its collection lines to areas outside its corporate limits because it could serve the areas more economically than the Sewer District.
The City finally contends the circuit court erred in finding agreements between two property owners and the City to provide sewerage collection lines to their property were not binding upon the Sewer District unless ratified. The City argues these matters were not raised in the motion for summary judgment and therefore were not properly before the circuit court for determination.
The circuit court found the City should be permitted to continue providing service to persons and properties located outside its corporate limits which were receiving those services on or before January 23, 1981, the date of the commencement of this action. The two agreements at issue were entered into after that date. Since the court ruled the City could not provide services to areas outside its corporate limits without permission from the Sewer District, and the City presented the court with these two agreements, there *74 was no harm in the court's ruling that these agreements were not binding upon the Sewer District unless ratified.
Accordingly, we hold the circuit court did not err in granting the Sewer District's motion for summary judgment.

USE OF REVENUES AND GENERAL FUNDS
The city contends the circuit court erred in refusing to enjoin the Sewer District from using general funds for special purposes. The City asserts Act 1503 requires sewerage collection lines installed by the Sewer District within the district and outside the subdistricts be paid solely by the charges imposed on the users of the lines.
The record reveals property within the district and outside the subdistricts was subject to the Sewer District's ad valorem tax levies from 1929 through 1978 and did not receive sewer service from the Sewer District. To redress the inequity for some of the property owners in this area, the Sewer District authorized the installation of sewerage collection lines at less than full cost. The subsidy was provided out of the District's general revenues. The District justifies this subsidy by the fact that these property owners subsidized the cost of the sewer system to the benefit of the subdistricts for forty-nine years without receiving sewer service.
The circuit court found this practice equitable and proper and not prohibited by Act 1503. The court found subsections 2(f) and 2(i) of the Act authorized subsidies in certain instances and that § 6-11-1230(4) of the Code gives commissions of sewer districts the discretion to assess so much of the actual cost of constructing sewer lateral collection lines as it deems appropriate.
In the construction of statutes, the dominant factor is the intent, not the language of the legislature. Abell v. Bell, 229 S.C. 1, 91 S.E. (2d) 548 (1956). A statute must be construed in light of its intended purposes, and, if such purpose can be reasonably discovered from its language, the purpose will prevail over the literal import of the statute. Id.
It is clear the legislature recognized some instances where it would be inequitable to require the property owner to pay his share of the actual cost of the construction of the collection lines. See Act 1503, Section 12.2(f) and (i). Further, § 6-11-1210 et seq. of the Code, which complements *75 and supplements Act 1503, gives the Sewer District Commission the authority to subsidize the cost of construction sewer collection lines as it deems appropriate. We therefore find the circuit court did not err in refusing to enjoin the Sewer District from using general funds to construct the collection lines used by property owners who had subsidized the sewer system for forty-nine years without the benefit of its use.

THE ACCOUNTING SYSTEM OF THE SEWER DISTRICT
The City requested in its counterclaim: (1) the Sewer District be required to implement a functional accounting system; and (2) the Sewer District account for all general funds collected and disbursed since 1970 and give proper credits to the accounts so to be in accordance with Act 1503, the laws and Constitution of this State.
The Sewer District and its predecessor were funded from 1929 to 1978 through an ad valorem tax levied against all taxable property in the district. In 1979, the Sewer District instituted a sewer user charge as its chief source of revenue so as to comply with federally mandated requirements for continued eligibility for federal grants.
The City concedes in its brief that the Sewer District has, since this action was instituted, separated its expenditures by function but argues it does not separate its revenue by function.
The circuit court found that with the advent of the user charge, the Sewer District developed and now employs a functional accounting system. The court further found the Sewer District, through its functional accounting system, reconciles the income received with its actual expenses on an annual basis. A review of the testimony and exhibits reveals the Sewer District maintains records adequate to insure each user pays only for the service he receives.
The City requested the court to require an accounting of all the general funds collected and disbursed by the Sewer District since 1970 and to give proper credits to accounts in accordance with Act 1503. The court denied this request finding such an accounting would serve no useful purpose and could not be done without great disruption and expense to the Sewer District. The court found there was no showing by the *76 City of any wrongdoing or any impropriety which might be uncovered by such an accounting. The court stated the City had an opportunity and did in fact review the Sewer District's financial records since prior to 1970 and have cited no error or omission by the District which would justify such an extreme measure as an accounting.
We agree with the circuit court that the City has failed to cite any wrongdoing or impropriety, error or omission by the Sewer District which would justify an accounting.

CHARGES IMPOSED ON ANNEXED AREAS
The City contends the circuit court erred in holding Act 1503, § 9.6 does not require the District to impose a charge on areas annexed since 1970 to pay for expansion of interceptors and treatment plants necessary to serve those areas.
Section 9.6 of Act 1503 provides:
When any area is annexed to the district, the commission shall take into consideration the additional waste contributed to the system by such area and present and future expansion of interceptor lines and disposal facilities needed to accommodate and service such area. When such consideration indicates probable need for expansion to take care of the sewage needs of such area, the commission shall impose such additional charge by way of sewer service charge of [sic] tax on the area annexed as would reasonably pay for such additional needed facilities.
The circuit court held § 9.6 does not require the District to impose any additional charge upon users in the annexed area unless there exists probable need for expansion to take care of the sewerage needs in the annexed area. The plain language of § 9.6 clearly supports the court's holding.
The circuit court found the District's consideration indicated no probable need for expansion until February 17, 1981, at which time it imposed an additional charge, an annexation privilege charge, on the annexed area. The court found the charge to be a reasonable method of providing the funds necessary to pay for any additional facilities required as a result of annexation to the district, and a charge which complied with § 9.6.
*77 The City contends there is no evidence to show the charge is reasonable and that the undisputed evidence shows that such charge will be inadequate to pay for expansions made to serve areas annexed since 1970 and areas not yet annexed.
Article XI of the Rules and Regulations of the District provides for this annexation privilege charge. It is a one time charge which is based upon the strength of domestic wastewater proposed to be discharged into the District's sewer system. It may be reviewed and changed as deemed appropriate. We agree with the circuit court that the annexation privilege charge complies with the requirement of § 9.6 of Act 1503 that additional facilities needed to take care of the sewage needs in annexed areas be paid for by the annexed areas.

THE McCRACKEN JUNIOR HIGH SCHOOL LINE
The City argues the District should be required to convey to the City the sanitary sewer collection line which extends from the City to McCracken Junior High School (the McCracken line), or to enjoin the District from allowing further taps onto the McCracken line without written approval from the City.
In 1977, Spartanburg County School District Number 7 (the School District) proposed to construct a sanitary sewer line from the City to McCracken Junior High School. The City declined to participate in the construction. The District requested the School District to obtain "a written letter from the City of Spartanburg in which they clearly agree to permit the proposed 8-inch sewer line to serve Webber Road School (now McCracken Junior High School) be connected to their connection line in Cart Drive without any reservations, restraints or conditions other than relating to infiltration/ flow." The City Manager responded:
[T]he Spartanburg City Council last night approved the connection by the Spartanburg Sanitary Sewer District of an eight (8") inch sewer line serving the new junior high school to the City's existing twelve (12") inch line at the City Limits on Cart Drive. City Council also authorized the preparation of this letter indicating City Council's permission to connect the new eight inch line without any reservations, restraints or conditions other than those relating to infiltration and flow.
*78 On March 6, 1979, after construction of the McCracken line, the School District and the Sewer District entered into an agreement whereby the District, which had paid $25,000.00 towards construction, would be transferred ownership of the line, would assume full responsibility for the operation, maintenance, and repair of the McCracken line, and would be allowed to make connections and extensions to the McCracken line.
John A. Prather, who designed the McCracken line, testified he calculated forty-two or forty-three existing residential structures and potentially eighty additional lots could be served along the line. He further testified the School District, in its negotiation of an exchange of property located beyond the school, agreed with the owner that he could tap into the McCracken line.
W.H. Carstarphen, Spartanburg City Manager, testified a city engineer projected a maximum of eighty residential taps along had been a grant of the use of the McCracken line to the School District, not the Sewer District, and any further extension or taps on the line should first be approved by City Council. The City contends in its Brief that the only additional taps contemplated at the time it granted permission for the School District to tap onto the city sewer line were those taps from residential users abutting the line between the school and the city limits.
The circuit court found the agreement gave the District the power to use the McCracken line for any purpose, including extension of the line to properties beyond the school; but found, however, it was equitable to prohibit the District from further extending the McCracken line from its present location without the written approval and consent of the City. The court stated this would not limit the District's right to permit persons located in the vicinity of the existing McCracken line as presently extended to tap onto the line.
The sewer District in its Brief recognizes the City must be able to plan for any expanded service beyond that anticipated when the District was given permission to tap onto the City's sanitary sewer collection system and stands ready to discuss compensation for the operation and maintenance of the City's collection line and pump station.
*79 The City clearly gave permission for additional taps to be connected onto the McCracken line between the Junior High School and the City. It would be imprudent and wasteful not to extend the line to allow further taps to residences in the vicinity of the line. However, we agree with the circuit court's determination that it is only equitable that the Sewer District compensate the City for its portion of the maintenance and operation of the collection line and pump station.

MAYOR PRO TEMPORE
Finally, the City argues the circuit court erred in holding the mayor pro tempore was not authorized to serve and vote as a member of the District Commission in the mayor's absence. We agree.
The mayor serves on the District Commission by virtue of his office. Section 5-7-190 of the Code provides in pertinent part: "The Mayor Pro Tempore shall act as Mayor during the absence or disability of the Mayor." Whenever the mayor cannot attend meetings of committees on which he serves by virtue of his office, the mayor pro tempore shall serve in his absence.
Affirmed as modified.

II.
The City brought this action alleging Act 772 of the 1973 Acts and Joint Resolutions of the General Assembly (which amended Act 1503 of 1970) violates Article VIII of the South Carolina Constitution. Act 772 was approved by the governor June 15, 1973; Article VIII had been ratified March 7, 1973. The circuit court found the Act constitutional on the following grounds: (1) § 4-9-80 of the Code evinces the reservation by the General Assembly of the power to deal with special purpose districts when necessary by enacting legislation as required; (2) the needs of Spartanburg County could not be met by a general law; thus, the General Assembly could enact this special legislation; (3) Act 772 is constitutional as "one-shot" legislation; and (4) the General Assembly may provide for the needs of a special purpose district through special legislation if the district performs a local function which the particular county is unable or unwilling to perform. We reverse.

*80 CONSTITUTIONALITY OF ACT 772 OF 1973
Article VIII, § 7 provides in part:
The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties ... No laws for a specific county shall be enacted and no county shall be exempted from the general law or laws applicable to the selected alternative form of government.
This provision does not destroy the function of a special purpose district but in effect empowers the county governments to create special purpose districts by giving them the power to tax on the basis of the governmental services provided. Knight v. Salisbury, 262 S.C. 565, 206 S.E. (2d) 875 (1974). Article VIII, § 7 is not only applicable to special legislation creating a special purpose district, but also to special legislation dealing with special purpose districts created prior to the ratification of Article VIII or the amendment of prior special legislation. Cooper River Park and Playground Commission v. North Charleston, 273 S.C. 639, 259 S.E. (2d) 107 (1979) (citing Torgerson v. Craver, 267 S.C. 558, 230 S.E. (2d) 228 (1976).
The circuit court concluded the General Assembly could still, under § 4-9-80 of the Code, enact legislation dealing with special purpose districts. Section 4-9-80 provides in pertinent part:
The provisions of this chapter shall not be construed to devolve any additional powers upon county councils with regard to public service districts, special purpose districts, water and sewer authorities, or other political subdivisions by whatever name designated, (which are in existence on the date one of the forms of government provided for in this chapter becomes effective in a particular county) and such political subdivisions shall continue to perform their statutory functions prescribed in laws creating such districts or authorities except as they may be modified by act of the General Assembly....
As stated in Berry v. Weeks, 279 S.C. 543, 309 S.E. (2d) 744 (1983), "[t]he interactions of counties with special purpose districts existing prior to home rule is indeed confusing." We *81 need only look at § 4-9-80 and § 6-11-420 of the Code. Both sections deal with special purpose districts. Section 4-9-80 appears to deny the county authority to alter the size or function of a special purpose district which existed prior to the date the county government becomes effective. Section 6-11-420 gives the county boards the authority to enlarge, diminish or consolidate any existing special purpose districts in the county. The only way to reconcile these seemingly contradictory provisions is to follow the constitutional mandate of Article VIII, § 7 that the General Assembly can modify legislation regarding special purpose districts only through the enactment of general law and that, through this general law, counties now have the authority to enlarge, diminish or consolidate any special purpose districts within the county. (The county cannot abolish the special purpose district unless given that authority through general law enacted by the General Assembly. Berry v. Weeks, supra.)
Thus, we hold the circuit court erred in holding § 4-9-80 allows the General Assembly to enact special legislation regarding special purpose districts.
The circuit court also found Act 772 constitutional on the ground the needs of Spartanburg County could not be met by general law. We find no evidence in the paltry record to this effect and this ground was not advanced in the Sewer District's Answer.[1] Since this matter was not before *82 the court, the circuit court erred in finding Act 772 constitutional on that ground.
The circuit court found the Act constitutional as "one-shot" legislation. Again, this ground was not presented in the Sewer District's Answer and there is no evidence in the record to indicate this is "one-shot" legislation. This Court in Duncan v. York County, 267 S.C. 327, 228 S.E. (2d) 92 (1976), found an act constitutional as "one-shot" legislation  legislation which would be required to bring about an orderly transition to home rule, legislation of a temporary nature which extends only to the point necessary to place Article VIII fully into operation. In Richardson v. McCutchen, 278 S.C. 117, 292 S.E. (2d) 787 (1982), this Court stated the purpose of transitional legislation was simply to establish an initial legal county government. Clearly, the purpose of Act 772 is not to establish an initial, legal county government. We hold the circuit court erred in finding Act 772 constitutional as "one-shot" legislation.
Finally, the circuit court found Act 772 constitutional on the ground the General Assembly may provide for the needs of a special purpose district through special legislation if the district performs a local function which the county is unable or unwilling to perform. Again, this ground was not advanced in the Sewer District's Answer and there is no evidence in the record before us to sustain such a finding. Therefore, the circuit court erred in finding Act 772 constitutional on this ground.
We hold Act 772 of 1973 unconstitutional as special legislation violative of Article VIII of the South Carolina Constitution.
Reversed.
LEWIS, C.J., NESS and HARWELL, JJ., and WALTER T. COX, III, as Acting Associate Justice, concur.
NOTES
[1] Counsel for the City requested the circuit court to take judicial notice of the fact that several cases involving facts appropriate to this determination were either pending or had been tried. He also requested the court to consider any fact that may be in the record of the appeal with which this appeal was consolidated. Counsel for the Sewer District apparently contends in Brief of Respondent that this request asked the court to review those lawsuits and take judicial notice of what they involved.

Apparently, counsel for the Sewer District interprets "judicial notice" more broadly than this Court. This court stated in Moss v. Aetna Life Insurance Co., 267 S.C. 370, 288 S.E. (2d) 108, 112 (1976):
"Judicial notice" takes the place of proof. It simply means that the court will admit into evidence and consider, without proof of the facts, matters of common and general knowledge. "The test is whether sufficient notoriety attaches to the fact involved as to make it proper to assume its existence without proof." (citations omitted.)
Surely, the court was not requested to take judicial notice of all facts in the lawsuits to which counsel for the City referred. Yet, we are not told which facts were judicially noticed. Furthermore, the Sewer District has referred to no page in the appeal with which this case was consolidated which contains evidence to support the court's finding. Counsel should make clear at the trial level and at the appellate level what facts are to be judicially noticed and should refer the Court to the evidence supporting its position, particularly when counsel requests the courts (trial and appellate) to consider facts in another appeal.